THE STATE OF MISSOURI ex rel. I. V. McPHERSON, Prosecuting Attorney, etc., Appellant, v. ST. LOUIS and SAN FRANCISCO RAILROAD CO., Respondent.

Kansas City Court of Appeals, March 7, 1904.

1. RAILROADS: Stop at Intersection: Statutory Construction: Penalty. A penal statute must be strictly construed so as not to enlarge the liability it imposes, nor allow recovery unless the party seeking such brings himself strictly within its terms.

2. ———: ———: ———: ———. Section 1075, Revised Statutes 1899, requires railroad passenger carriers to stop their passenger trains at the intersection of other railroads a sufficient time to transfer passengers, baggage, etc., to the trains of the intersecting road; and its object was to afford facilities for persons traveling on one railroad and destined to points on an intersecting road.

3. ———: ———: ———: ———. To establish a case under said section the relator must prove that passengers, baggage, mail and express freight for the intersecting road was at the junction on the day mentioned and that the respondent road did not stop its train a sufficient time to accomplish the transfer; and mere proof that the trains of respondent road passed without stopping is insufficient.

4. ———: ———: ———: ———. The construction of a statute should accord with reason and the reason should prevail over the letter and general terms should be limited so as not to lead to injustice or oppression.

5. ———: ———: ———: ———: **Evidence.** It is held that neither evidence introduced nor that refused was sufficient to make out a case under the statute.

Appeal from Dade Circuit Court.—*Hon. H. C. Timmonds*, Judge.

AFFIRMED.

*R. H. Davis, I. V. McPherson* and *Edw. J. White* for plaintiff.

(1) The court excluded competent evidence offered by the plaintiff. Mumford v. Wilson, 19 Mo. 669; Donovan v. Railroad, 158 Mass. 450; Briggs v. Grand Trunk Co., 24 N. C. Q. B. 510; State ex rel. v. Railroad, 149 Mo. 104; Railroad v. Owens, 1 Tex. App. 163; Gulf Co. v. Wright, 2 Tex. Civ. App. 463, 21 S. W. 399. (2) The defendant should have been compelled to produce its train sheets, showing the dates on which trains five an six failed to stop at Aurora. Greenburg v. Railroad, 23 Ind. App. 141, 55 N. E. 46; State ex rel. v. Railroad, 70 Mo. App. 635; LaFountaine v. Ass'n Underwriters, 83 N. C. 132; Rice on Evidence, 309; Ex Parte Busket, 106 Mo. 602; State v. Pomeroy, 130 Mo. 489; State v. Davis, 108 Mo. 666; State ex rel. v. Hardware Company, 109 Mo. 124. (3) The court should have submitted the case to the jury. Gladson v. Minnesota, 166 U. S. 427; Railroad v. People of New York, 165 U. S. 628; Lake Shore Co. v. Ohio, 173 U. S. 285; Stone v. Trust Co., 116 U. S. 307; Railroad v. Jacobsin, 179 U. S. 287; Stone v. Railroad, 116 U. S. 347; Wash. Co. v. Brown, 17 Wall. 445; State v. Williams, 44 Mo. App. 302; State v. Railroad, 83 Mo. 144; Logan v. Railroad, 74 Ga. 684; Phil. etc. Co. v. Catawissa Co., 53 Pa. St. 20; Railroad v. Denver, etc. Co., 110 U. S. 667; Lamb v. Railroad, 147 Mo. 171.

*L. F. Parker, E. P. Mann* and *J. T. Woodruff* for respondent.

(1) This case is, in its nature, criminal, and the defendant can not be required to give evidence which would in any way tend to subject it to a penalty or forfeiture. The rule is laid down in 26 Encyclopedia of Pleading and Practice, page 743. 29 Am. and Eng. Enc. of Law, 824; Johnson v. Donaldson, 3 Fed. 22; Swan v. Mast, 63 Fed. 623; Story Eq. Plead., Clause 607, page 846; 1 Greenleaf on Ev., section 453. (2) The third and last error complained of is that the court should have submitted the case to the jury. In other words, should not have sustained the demurrer to his evidence at the close of plaintiff's case. To support this contention appellant cites: Gladson v. Minn., 166 U. S. 427; Railroad v. People, 165 U. S. 628; Railroad v. Ohio, 173 U. S. 285; Stone v. T. R. Co., 116 U. S. 307. All of these cases relate to the question of whether or not the statute in question, as applied to the facts in this case, is in violation of that provision of the federal constitution giving Congress the exclusive right to regulate interstate commerce. (3) If, as we have all along supposed, the court sustained the demurrer at the close of the plaintiff's case, on the ground that his evidence did not entitle him to go to the jury, then we should scrutinize his evidence, and see whether the ruling was proper. 13 Am. and Eng. Enc. of Law, 55, 491.

SMITH, P. J.—This is an action brought by the State at the relation of the prosecuting attorney to recover the penalty prescribed by section 1075, Revised Statutes. It is stated and not denied that the petition was in one hundred and seventy-eight counts; that each count was identical with that copied into the record here, except as to date. The statutory violations for which

the penalty is in each count demanded took place between March 1 and June 30, 1901 and December 1, 1901 and January 27, 1902, or, one on each day between the dates just stated.

The count of the petition just referred to alleged that on the first day of March, 1901, it was the legal duty of the defendant, under the provisions of section 1075, of the Revised Statutes of the State of Missouri, for 1899, to stop all its trains carrying passengers, at said city of Aurora, at said intersection and connection of the defendant's said track with the said track of the said Kansas City, Fort Scott & Memphis Railroad, a sufficient length of time to allow the transfer of passengers, personal baggage, mails and express freight from the passenger trains of the defendant, to the said Kansas City, Fort Scott & Memphis Railroad and from the passenger train of the said Kansas City, Fort Scott & Memphis Railroad, to the passenger trains of the defendant, two passenger trains being on the said day scheduled to run, and being then and there run by the said Kansas City, Fort Scott & Memphis Railroad, from the said city of Aurora to the city of Greenfield, Missouri, and connecting at Aurora, with the passenger trains on defendant's road.

Supplementing these allegations was that to the effect that the defendant had committed a breach of the statutory duty therein alleged, in consequence of which it became liable to forfeit and pay to the State for the use of the school fund of Lawrence county, the sum of twenty-five dollars, etc.

The answer upon which the case was tried was a general denial. At the conclusion of the relator's evidence the court, at the request of the respondent, gave an instruction in the nature of a demurrer thereto; and thereupon the relator suffered a nonsuit, and after an unsuccessful motion to set the same aside prosecuted his appeal here.

The statute—section 1075, supra—on which the

action is founded provides that: ''Every railroad corporation of this State which now is or may hereafter be, engaged in the transportation of passengers or property, . . . *are hereby required to stop all trains carrying passengers, at the junction or intersection of other railroads a sufficient length of time to allow the transfer of passengers, personal baggage, mails and express freight from the trains of railroads so connecting or intersecting;* . . . and they shall be compelled to receive all passengers and freight from such connecting or intersecting roads whenever the same shall be delivered to them. Every railroad corporation or company which shall fail, neglect or refuse to comply with any or either one of the provisions of this section from and after the first day of July, 1885, shall, for each day said corporation or railroad refuses, neglects or fails to comply therewith after said day, forfeit and pay the sum of twenty-five dollars, which may be recovered in the name of the State of Missouri, to the use of the school fund of the county wherein said crossing is situate. . . . ''

As to whether or not the statutory provision just quoted as applied to the facts of this case is violative of section 8, article 1, of the constitution of the United States regulating commerce among the several States is a question that is not brought before us for decision by the appeal; and if it were we would not consider it because without our jurisdiction. But whether or not on the evidence adduced by the relator he was entitled to a submission to the jury is a question which we are obliged to decide.

The foregoing is a penal statute. It enjoins upon railroad companies the duty to do certain things which, if not done, subjects them to the payment of a fixed penalty; and being penal, it must be strictly construed so as not to enlarge the liability it imposes, nor allow a recovery under it unless the party seeking it brings his case strictly within the terms or conditions authorizing

it.   State v. Railway, 83 Mo. 1. c. 148; Parish v. Railway, 63 Mo. 284.

The evident purpose the legislature had in view in its enactment requiring railroad passenger carriers to stop all their passenger trains at the junction or intersection of other railroads a sufficient length of time to allow the transfer of passengers, personal baggage, mails and express freight from the trains of such intersecting railroads, was to afford facilities to persons travelling on one railroad and destined to some point on another intersecting it. State v. Railway, 83 Mo. supra; Logan v. Railway, 77 Mo. 663.

The evidence adduced at the trial tends to show that the defendant road was intersected by the Kansas City, Fort Scott & Memphis Railroad at Aurora, in this State, and that the defendant ran three trains each way each day which stopped regularly at Aurora Junction to receive passengers, baggage, mail and express freight from such intersecting raiload.   It further tended to show that defendant ran a train each way each day known as the Texas Limited and St. Louis Limited, which was not scheduled to stop at Aurora Junction. It was in effect conceded that the defendant's three trains which stopped regularly at Aurora took care of and accommodated all the business originating upon or destined to points on said intersecting railroad so that there was no occasion for said limited trains which followed them to stop at Aurora.   It is true that it appears from the testimony of respondent's conductor, engineer and other employees that for many of the days included in the two periods of time specified in the petition that it—respondent—did not stop its said limited trains at Aurora; but was this sufficient to establish a prima facie case? To establish such a case it devolved on the relator to prove that passengers, personal baggage, mails and express freight from said intersecting railroad was at Aurora on a day mentioned in one of the counts of the petition and that the said limited trains

did not then and there stop a sufficient length of time to accomplish the transfer from the former to the latter.

The construction of a statute should accord with reason and common sense and should not require unreasonable things. Cole v. Railroad, 47 Mo. App. 624. The reason of the law should prevail over its letter, and general terms should be so limited in their application as not to lead to injustice, oppression or an absurd consequence, the presumption being that the legislature intended no such anomalous results. Verdin v. St. Louis, 131 Mo. 26. A construction of this statute which would require the respondent to stop all of its trains at Aurora Junction, whether or not passengers, baggage, mail and express freight from its intersecting railroad is there waiting to be transferred and carried by it further along on its line would be an unreasonable and oppressive requirement. Suppose the respondent should run, as it may do, ten passenger trains each way each day over its road. Suppose, further, that the intersecting road should only run one and on its arrival at Aurora the respondent should without delay have trains there ready to receive the passengers, baggage, mail and express freight from it so as to leave nothing there for the other nine trains to carry. And suppose, further that three of its ten trains stopping there, including that just referred to, afforded ample facilities for the local travel to and from there; would any court say that a reasonable construction of the terms of this statute would require the remainder of such trains to stop, too, though there was nothing for them to do? In a State like this where the great through lines of railway running north and south and east and west so often intersect each other, and are intersected by local roads a construction of the statute here requiring that they stop all of their trains at each of said intersections, whether or not there be any persons, baggage, mails or express matter from the intersecting roads to be carried by them would render the rapid transit of per-

sons, property and the mails from the east to the west and from the north to the south, and the reverse, impossible; and this the legislature, by the statute, never intended to do.

Neither the evidence introduced nor that rejected tended to prove that on any day within either of the periods of time specified in either count of the petition the respondent failed to stop one of its trains at Aurora Junction when there was any passenger, baggage, mail or express matter from the connecting railroad to be transferred and carried on either of such trains not stopping and therefore the proof was insufficient to make out a case under the statute. The fact that a witness testified that he had bought a ticket from an Arkansas point to Aurora, where he had lived and that he was required to leave the limited train before reaching Aurora and to take a local train that stopped at Aurora, in the light of Logan v. Railway, supra, could have no bearing on the case.

It is difficult to see how the action of the court in excluding from the evidence the petition to compel the production of the train sheets, etc., the train dispatches, record, time tables, statements of respondent's agents, etc., harmed the relator since such excluded evidence did not supply the deficiency to which we have previously referred. If this excluded evidence had been admitted it would have showed no more than that said trains did not stop at Aurora at the dates alleged in the petition and even with such excluded evidence in, the result would not have been different.

In none of the rulings of the court in excluding evidence do we discover any error justifying a reversal of the judgment which must accordingly be affirmed. All concur.