# HERNDON, PROSECUTING ATTORNEY OF CLINTON COUNTY, MISSOURI, AND SWANGER, [ROACH] SECRETARY OF STATE OF THE STATE OF MISSOURI, *v.* CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

No. 150.   Argued April 14, 1910.—Decided May 31, 1910.

Objections to a bill for multifariousness and improper joinder of parties must be promptly made, and properly by special demurrer specifically directed to the objection; and so *held* that in the absence of specific objection properly raised at the outset the court can determine in the same action, as against the prosecuting attorney of a State, whether a statute is enforceable under the Constitution of the United States, and, as against the secretary of state, whether the bringing of the action in the Federal court will, under another statute, forfeit complainant's right to do business in the State.

*Ex parte Young*, 209 U. S. 1, and *West. Un. Tel. Co.* v. *Andrews*, 216 U. S. 165, followed, to effect that an action brought to enjoin state officers charged with the execution of a state statute from enforcing the same on the ground that such statute violates the Federal Constitution is not an action against the State within the prohibition of the Eleventh Amendment.

Where a railroad company has already provided adequate accommodation at any point, a state regulation requiring interstate trains to stop at such point is an unreasonable burden on interstate commerce and void under the commerce clause of the Federal Constitution, and this rule equally applies to junction, as to other, points; and so *held* as to the act of March 19, 1907, amending § 1075, Rev. Stat. of Missouri.

A statute requiring interstate trains to stop at junction points for the convenience of passengers should be construed as a regulation of commerce and not as a police statute for the protection of life and limb.

While the right to do local business within a State may not be derived from the Federal Constitution, the right to resort to Federal courts is one created by that Constitution; and, as against a foreign cor-

poration already established within its borders, a State cannot forfeit the right to do business because of the bringing of an action in the Federal court, and so *held* that the act of March 13, 1907, of Missouri, imposing such a penalty, is unconstitutional and void as to a foreign corporation already in the State at that time.

THE facts, which involve the constitutionality of certain statutes of the State of Missouri, are stated in the opinion.

*Mr. James T. Blair*, with whom *Mr. Elliott W. Major*, Attorney General of Missouri, and *Mr. Charles G. Revelle* were on the brief, for appellants:

Statutes requiring trains to stop at the intersection of the track on which they are running with the tracks of other railroads are valid as police regulations. *I. & St. L. R. R. Co. v. People*, 91 Illinois, 455; *Birmingham R. R. Co. v. Jacobs*, 92 Alabama, 191; *R. & D. R. R. Co. v. Freeman*, 97 Alabama, 297; *P. & P. U. Ry. Co. v. P. & F. Ry. Co.*, 105 Illinois, 117; *C. & A. R. R. Co. v. J. L. & A. Ry. Co.*, 105 Illinois, 400; *S. A. & A. P. Ry. Co. v. Bowles*, 88 Texas, 639; *Louisville R. R. Co. v. E. T. Ry. Co.*, 22 U. S. App. 110; *State v. K. C., Ft. S. & G. R. R. Co.*, 32 Fed. Rep. 724; *Ches. & Ohio Ry. Co. v. Commonwealth*, 99 Kentucky, 176; *Commonwealth v. Ches. & Ohio Ry. Co.*, 29 S. W. Rep. 136; *F. & P. M. R. R. Co. v. D. & B. C. R. R. Co.*, 64 Michigan, 370; *K. C. Sub. B. Ry. Co. v. K. C., St. L. & C. Ry. Co.*, 118 Missouri, 623; *L. S. & M. S. R. R. Co. v. Railway Co.*, 30 Ohio St. 610; 33 Cyc. 670; Freund on Police Power, § 73; *Southern Ry. v. King*, 87 C. C. A. 290; Elliott on Railroads, 2d ed., § 668; *Cleveland Ry. Co. v. Illinois*, 177 U. S. 522, 523; *Iowa v. C. M. & St. P. Ry. Co.*, 122 Iowa, 24.

Appellee is not in a position to assail the act. *Castillo v. McConnico*, 168 U. S. 680; *Balt. Traction Co. v. Belt R. R. Co.*, 151 U. S. 138. As construed by the state court the statute is designed to secure proper facilities for the

accommodation of those passengers of each intersecting road whose destination is some point on the other. *State v. W. & St. L. & P. Ry. Co.*, 83 Missouri, 148; *Logan v. H. & St. J. R. R. Co.*, 77 Missouri, 666; *State v. Railroad*, 105 Mo. App. 212.

An act affecting different classes may be unconstitutional as to some and valid as to the rest. In such case one of a class within the valid provisions of the act cannot set up the unconstitutionality of the provisions which are inapplicable to him. *Supervisors v. Stanley*, 105 U. S. 311; *In re Garnett*, 141 U. S. 12; *Clark v. Kansas City*, 176 U. S. 118; *Patterson v. Bark Eudora*, 190 U. S. 176; Cooley's Const. Lim., 250; *Reduction Co. v. Sanitary Works*, 199 U. S. 318; *Hatch v. Reardon*, 204 U. S. 160.

Appellee cannot assail the act as it was in force prior to its entrance into Missouri. *Daggs v. Orient Ins. Co.*, 136 Missouri, 398; *Orient Ins. Co. v. Daggs*, 172 U. S. 566; *Louis. & Nash. Rd. Co. v. Kentucky*, 183 U. S. 512, 513.

The act as construed by the state courts is valid. *N. Y., N. H. & H. R. R. v. New York*, 165 U. S. 631; *Missouri v. Larabee Mills*, 211 U. S. 621; *Gladson v. Minnesota*, 166 U. S. 430; *Cleveland &c. Ry. Co. v. Illinois*, 177 U. S. 522; *Mich. Cent. R. R. v. Powers*, 201 U. S. 291; *Pacific Express Co. v. Seibert*, 142 U. S. 348.

The bill contains no grounds for equitable interposition as against Herndon. *Cruikshank v. Bidwell*, 176 U. S. 80; *Pacific Exp. Co. v. Seibert*, 44 Fed. Rep. 315. There must be a real and not an imaginary danger of a multiplicity of suits. *T. & B. R. R. Co. v. B. H. T. & W. Ry. Co.*, 86 N. Y. 128; *Arbuckle v. Blackburn*, 191 U. S. 413, 415.

The bill is bad as it attempts to join two distinct proceedings. Street's Fed. Eq. Prac., § 440; *Gaines v. Chew*, 2 How. 642; *Brown v. Guarantee Trust Co.*, 128 U. S. 412.

This objection can be taken despite the fact that the question was not raised specifically by the demurrer.

*Hefner* v. *Northwestern Ins. Co.*, 123 U. S. 751; *Emmons* v. *Nat. Mut. B. & L. Assn.*, 68 C. C. A. 330.

The suit is one against the State within the prohibition of the Eleventh Amendment. *Smyth* v. *Ames*, 169 U. S. 518, 519; *Ex parte Young*, 209 U. S. 149 *et seq.*

This is a suit merely to test the constitutionality of the act by suit against the secretary of state, as such, and cannot be maintained. *Fitts* v. *McGhee*, 172 U. S. 530; *Ex parte Young*, 209 U. S. 156, 157; *In re Ayres*, 123 U. S. 443.

No case being made against the prosecuting attorney the suit against the secretary of state cannot be maintained.

The act against removals is not repugnant to Art. III of the Constitution. *Doyle* v. *Continental Ins. Co.*, 94 U. S. 535; *Security Mutual Life Ins. Co.* v. *Prewitt*, 202 U. S. 246; *Cable* v. *United States Life Ins. Co.*, 191 U. S. 288.

The guaranty in Art. III as to trial by jury, relates to the trial of crimes. *Nashville &c. Ry.* v. *Alabama*, 128 U. S. 101.

The act does not violate the interstate commerce clause of the Constitution. It specifically permits the transaction of interstate business by appellee even after revocation of its license for violating the act. *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 46; *Louis. & Nash. R. R. Co.* v. *Kentucky*, 183 U. S. 512, 518.

Appellee is not denied the equal protection of the laws. *Ducat* v. *Chicago*, 10 Wall. 415; *Norfolk Ry. Co.* v. *Pennsylvania*, 136 U. S. 118.

As no domestic corporation can resort to the Federal courts in cases in which jurisdiction is dependent upon diversity of citizenship, the act instead of destroying equality, effects it. *Security Mutual Life Ins. Co.* v. *Prewitt*, 202 U. S. 257.

The classification was not an illegal one. *Board of Education* v. *Illinois*, 203 U. S. 561; *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 188. Legislation dealing with

railroads as a class has been frequently upheld. *Missouri Ry. Co. v. Mackey,* 127 U. S. 209; *Minneapolis Ry. Co. v. Beckwith,* 129 U. S. 29; *Missouri Pacific Ry. Co. v. Humes,* 115 U. S. 512.

Appellee is not deprived by the revocation of its license of its property without due process of law nor are its privileges and immunities abridged. *National Council U. A. M. v. State Council,* 203 U. S. 163.

It is the enforcement of a law contravening the Fourteenth Amendment, not its enactment, which constitutes deprivation without due process. *Kaukauna Co. v. Green Bay &c. Canal,* 142 U. S. 269; *Yesler v. Wash. Harbor Line Commissioners,* 146 U. S. 656.

The act abridges no immunity, denies no privilege which appellee could enjoy as a "citizen of the United States." The constitutional provision invoked does not apply to appellee. *Waters-Pierce Oil Co. v. Texas,* 177 U. S. 45, 46; Cooley's Const. Lim., 7th ed., 567; *Slaughter-House Cases,* 16 Wall. 74 *et seq.*

Appellee and its predecessors secured no contract with Missouri under the act of 1870. Contracts between States and railroads are not created by this court by implication in order that acts of state legislatures' may be overturned. *Williams v. Wingo,* 177 U. S. 603; *Jackson v. Lamphire,* 3 Pet. 289; *Stone v. Mississippi,* 101 U. S. 816; *Central R. R. & Banking Co. v. Georgia,* 92 U. S. 670.

The provisions of general law applicable to foreign railway corporations were not rendered immutable and petrified, by the license taken out in 1902, under the act of 1891. *Schurz v. Cook,* 148 U. S. 407; *Gregg v. Granby M. & S. Co.,* 164 Missouri, 627; *Bienville Water Co. v. Mobile,* 186 U. S. 218; *Stone v. Mississippi,* 101 U. S. 816.

A mere license by a State is always revocable. *Doyle v. Continental Ins. Co.,* 94 U. S. 540; *Barron v. Burnside,* 121 U. S. 199; *Schurz v. Cook,* 148 U. S. 409.

The act of 1870 included no guaranty with reference to the right to sue in the Federal courts. No question, as to the State's right to prohibit the institution or removal by appellee of suits by reason of any other ground of Federal jurisdiction, is presented by the bill, and this investigation will be restricted to the case made. *Castillo v. McConnico*, 168 U. S. 681; *Supervisors v. Stanley*, 105 U. S. 311; *In re Garnett*, 141 U. S. 12; *Patterson v. Bark Eudora*, 190 U. S. 176; *Reduction Co. v. Sanitary Works*, 199 U. S. 318; *Hatch v. Reardon*, 204 U. S. 160.

*Mr. M. A. Low*, with whom *Mr. E. C. Lindley* was on the brief, for appellee in No. 150:

The grants contained in the several acts of the legislature of the State of Missouri authorizing foreign railway corporations to construct and operate railways are, when accepted, express and binding contracts, the impairment of which is a violation of the Federal Constitution. They are not mere licenses revocable at will. *New Jersey v. Yard,* 95 U. S. 104; *N. Y., L. E. & W. Ry. Co. v. Pennsylvania*, 153 U. S. 628; *Commonwealth v. M. & O. R. Co.*, 64 S. W. Rep. 451.

To add to the contract conditions imposing additional burdens, or taking away substantial rights, is to impair its obligation. *State ex rel. v. Cook*, 171 Missouri, 348.

To forbid a railway company to continue to transact its business within the State would be to destroy its property, and it has no power to do that, so long as the company continues to do business in the State in accordance with the terms of the contract under which it was admitted. *American Smelting Co. v. Colorado*, 204 U. S. 103. And see *So. Ill. & Mo. Bridge Co. v. Stone*, 174 Missouri, 1; *Stevens v. Pratt*, 101 Illinois, 217; *Academy v. Sullivan*, 116 Illinois, 375.

The act of the legislature of the State of Missouri providing for revoking the license, right and authority of a

non-resident railway company to do business in the State whenever it resorts to a Federal court, impairs the obligations of the contract with the State authorizing appellee to do business in the State, takes its property without due process of law, and deprives it of the equal protection of the laws.

If there be an impairment of the obligation, the amount is not material; this court has power to redress the wrong. *Farrington* v. *Tennessee*, 95 U. S. 679, 683; *Commonwealth* v. *M. & O. R. Co.*, 64 S. W. Rep. 451. The State did not in any statute admitting railroads to do business in the State, reserve the right after the railway company had accepted the grant to deprive it of its right to resort to the jurisdiction of Federal courts. No state legislature can deprive any person of the right to resort in a proper case to the courts of the United States. *Blake* v. *McClung*, 172 U. S. 239, 255; *Cowles* v. *Mercer County*, 7 Wall. 118, and see as to right of a foreign corporation to control its own business, *N. Y., L. E. & W. R. Co.* v. *Pennsylvania*, 153 U. S. 628; *Railway Co.* v. *Whitton*, 13 Wall. 270, 286.

The act of March 13, 1907, also denies equal protection of the laws. By the invitation and permission of the State, appellee is doing business therein, and is subject to its process at the instance of suitors, as fully as any domestic corporation. Under such circumstances it is entitled to invoke the protection of this clause of the Federal Constitution. *Northwestern National Life Ins. Co.* v. *Riggs*, 203 U. S. 243, 248; *G., C. & S. F. R. Co.* v. *Ellis*, 165 U. S. 150, 154.

The statute cannot be justified on the ground of classification. Foreign railway corporations which have been admitted to do business in the State upon an equality with domestic corporations, cannot be denied the equal protection of the laws of the State. *St. Tammany Water Works* v. *New Orleans Water Works*, 120 U. S. 64, 71;

*M. & St. L. Ry. Co.* v. *Beckwith,* 129 U. S. 26; *State* v. *Cadigan,* 50 Atl. Rep. 1079, 1081; *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79; *Ex parte Young,* 209 U. S. 123, 146; *Barbier* v. *Connolly,* 113 U. S. 27, 31.

A State cannot give a preference in litigation to its own citizens over those of other States, *Blake* v. *McClung,* 172 U. S. 239, 254–256, nor can it deny to a foreign railway corporation, authorized to operate railways in the State, access to the courts of the land when such right is fully and freely given to every person and to all other foreign corporations, as well as to domestic corporations. *Home Insurance Co.* v. *Morse,* 20 Wall. 445.

The act by reason of the enormous penalties imposed for an unsuccessful effort to test its validity, as well as by reason of the arbitrary power conferred upon the secretary of state, without a hearing, to revoke the license of appellee to do business within the State, takes its property without due process of law.

Due process of law means law in the regular course of administration through courts of justice, Kent, Com., 13. It requires notice, hearing and judgment, *Bertholf* v. *O'Reilly,* 74 N. Y. 519; *Londoner* v. *Denver,* 210 U. S. 373, 385.

The State cannot give its secretary of state purely personal and arbitrary power to take the property of a person or corporation, or to forfeit its right to use that property. *Wynehamer* v. *People,* 13 N. Y. 378, 392; *Hagar* v. *Reclamation District,* 111 U. S. 701, 708.

Cases holding that the licenses of certain transitory corporations, licensed, temporarily, to do business in a State, may be revoked on account of the removal of cases from state to Federal courts, can be distinguished. *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312, 343.

The act requiring all passenger trains to stop at the junction points is an unwarranted interference with interstate commerce. *Illinois Cent. R. Co.* v. *Illinois,* 163 U. S.

142; *Gladson* v. *Minnesota*, 166 U. S. 427; *L. S. & M. S. Ry. Co.* v. *Ohio*, 173 U. S. 285; *Cleveland, C., C. & St. L. Ry. Co.* v. *Illinois*, 177 U. S. 514.

After all local conditions have been reasonably provided for, railways may rightfully adopt special provisions for through traffic, and legislative interference therewith is an unreasonable and unlawful interference with interstate commerce. *Cleveland, C., C. & St. L. Ry. Co.* v. *Illinois*, 177 U. S. 514; *Mississippi R. R. Com.* v. *Illinois Cent. R. Co.*, 203 U. S. 335; *Atlantic Coast Line* v. *Wharton*, 207 U. S. 328.

This statute cannot be upheld as a reasonable exercise of the police power in regard to safe passage of the trains of one company across the railroad of another, as its manifest purpose is to provide for the transfer of passengers, baggage, mails and express freight at junction points.

The bill is not multifarious. *Graves* v. *Ashburn*, 215 U. S. 331; *Campbell* v. *Mackey*, 1 Mylne & Craig, 603, 617.

The objection of multifariousness comes too late. Multifariousness is a technical objection, *Brown* v. *Guarantee Trust Co.*, 128 U. S. 403, 412, which must be raised, if at all, at the first opportunity, and if not so presented, it is waived. When it appears on the face of the bill, the objection should be raised by special demurrer. *Billings* v. *Mann*, 156 Massachusetts, 203, 205; 1 Street's Fed. Eq. Pr., § 936; Daniel's Chanc. Pl. & Pr., 6th Am. ed., 586, note 5; *Jackson* v. *Glos*, 144 Illinois, 21.

While the court may, *sua sponte*, raise the objection of multifariousness, even on appeal, there seems to be no case in which it has been done. *Oliver* v. *Piatt*, 3 How. 332, 496.

*Mr. James P. Gilmore* and *Mr. Gardiner Lathrop*, with whom *Mr. Robert Dunlap* and *Mr. Thomas R. Morrow*

were on the brief, for appellee in No. 151, argued simul-taneously herewith:

The act in question is unconstitutional in that it impairs the obligation of a contract between the State of Missouri and the appellee, which had, prior to its passage, complied with the laws of that State relating to the qualification by foreign corporations to do business therein and which had received license or franchise therefor. *State ex rel.* v. *Cook*, 171 Missouri, 348; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *American Smelting & Refining Co.* v. *Colorado*, 204 U. S. 103; and see the recently decided cases by this court of *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1; *Pullman Company* v. *Kansas*, 216 U. S. 56; and also *Railroad Co.* v. *Pennsylvania*, 153 U. S. 628; *Gordon* v. *Appeal Tax Court*, 3 How. 133.

A contract created by a charter cannot be impaired during the life of the charter grant. *Attorney General* v. *Bank*, 4 Jones Eq. (N. C.) 287; *Wendover* v. *City*, 15 B. Monroe (Ky.), 258; *Commonwealth* v. *Mobile & Ohio R. R. Co.* (Ky.), 64 S. W. Rep. 451; *Bank* v. *Knoop*, 16 How. 369.

Similar statutes imposing burdens on foreign corporations were held unconstitutional in *Seaboard Railway Co.* v. *Railroad Commission*, 155 Fed. Rep. 792; *Railway Co.* v. *Ludwig*, 156 Fed. Rep. 152; *Western Union Telegraph Co.* v. *Julien*, 169 Fed. Rep. 166; *Railroad Co.* v. *Cross*, 171 Fed. Rep. 480.

The act deprives appellee of its property without due process of law. As the appellee acquired its railroad in the State of Missouri, with privileges and franchises appurtenant thereto, which included the right to use the same in the transportation of persons and property under the act of 1870, these rights and franchises appurtenant to the property became vested, and the State could not thereafter under the act of 1907 impose an arbitrary or

unreasonable condition upon the further exercise of such rights. After the rights and privileges had become vested, the State could only impose such reasonable police regulations concerning the use of the property and the conduct of the business as would be necessary to protect the public in general. *Society for Savings* v. *Coyte*, 6 Wall. 594; *Hamilton County* v. *Massachusetts*, 6 Wall. 632; *California* v. *Railroad Co.*, 127 U. S. 1; *State ex rel.* v. *Ackerman*, 51 Ohio St. 163; *Life Insurance Co.* v. *County*, 28 Montana, 484; *State* v. *Railroad*, 43 Minnesota, 17; *Wilmington Railroad* v. *Reid*, 13 Wall. 264; *Railroad Company* v. *Hewes*, 183 U. S. 66. See also *Railway Co.* v. *Sullivan*, 173 Fed. Rep. 556.

Rights and privileges which attach to the use of the property, when they become vested under the law of the State, are property rights which cannot be taken away without compensation by the State. *Gulf & S. I. R. R. Co.* v. *Hewes*, 183 U. S. 77; *Monongahela &c. Co.* v. *United States*, 148 U. S. 312; *Wilcox* v. *Cons. Gas Co.*, 212 U. S. 22, 44; *Brunswick & T. Water Dist. Co.* v. *Maine Water Co.*, 59 Atl. Rep. 537; *Garfield* v. *Goldsby*, 211 U. S. 249, 262.

The action of the secretary of state in cancelling the permit and forfeiting rights is unrestricted without any provision to protest against his decision in the first instance, or to review it after it has been made. *Hagar* v. *Reclamation District*, 111 U. S. 701; *Murray's Lessees* v. *Lancow*, 18 How. 272; *Holden* v. *Hardy*, 169 U. S. 366; *Scott* v. *McNeal*, 154 U. S. 34; *Barbier* v. *Connolly*, 113 U. S. 27; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *In re Quong Wo*, 13 Fed. Rep. 229; *In re Wo Lee*, 26 Fed. Rep. 471; *Barthet* v. *City*, 24 Fed. Rep. 563.

The action of the secretary of state is also made conclusive, which, under the circumstances of this case, cannot be permitted. It is not even subject to review in subsequent prosecutions for penalties. *Railway Co.* v.

*Minnesota,* 134 U. S. 418; *Felix* v. *Wallace County,* 62 Kansas, 832; *Railway Co.* v. *Simmonson,* 64 Kansas, 802; *Railway Co.* v. *Payne,* 33 Arkansas, 816; *Mayer* v. *Verlandi,* 39 Minnesota, 438.

The penalty provisions of the statute in question are so excessive and unreasonable that they violate the Fourteenth Amendment to the Constitution of the United States and result in depriving appellee of its property without due process of law. *Ex parte Young,* 209 U. S. 123.

The *Prewitt Case,* 202 U. S. 246, and other cases can be distinguished. *Insurance Co.* v. *Morse,* 20 Wall. 445; *Bigelow* v. *Nickerson,* 70 Fed. Rep. 113; *Reimers* v. *Seatco Mfg. Co.,* 70 Fed. Rep. 573.

The right of a State to impose conditions upon foreign corporations doing business therein is not unlimited. *Insurance Co.* v. *French,* 18 How. 404; *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28; *Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322; *American Refining & Smelting Co.* v. *Colorado, supra,* also distinguished.

MR. JUSTICE DAY delivered the opinion of the court.

This suit was brought by the Chicago, Rock Island and Pacific Railway Company in the Circuit Court of the United States for the Western District of Missouri to enjoin the execution of certain provisions of the acts of the legislature of the State of Missouri, as violative of complainant's rights under the Federal Constitution. The bill was filed against Harry T. Herndon, prosecuting attorney of Clinton County, Missouri, and John E. Swanger, secretary of state of the State of Missouri.

The bill is very lengthy, and as the decision of the court was made upon demurrer to it, it will be necessary to call attention to some of its pertinent allegations. Complainant avers that it is a duly organized corporation of the

State of Illinois, operating a railroad in certain States, among others, in the State of Missouri, and is engaged in both state and interstate commerce.   It sets forth in detail the acts of the State of Missouri authorizing the consolidation, extension and operation of the railroads under which it claims to have acquired its system of railroads in that State.   It avers that it duly filed with the secretary of state of the State of Missouri a copy of its charter, in compliance with the laws of the State, and received a certificate, November 22, 1902, in all respects in compliance with the laws of the State, authorizing the complainant to carry on business in said State for the term ending April 3, 1903, which certificate is in full force, never having been cancelled or withdrawn.

The bill sets forth the act of March 19, 1907, amending § 1075 of the Revised Statutes of Missouri, requiring railroad companies to perform certain duties, among others to stop passenger trains at the junction or intersecting points of other railroads.   As that amended section is one of the acts complained of it is set forth in the margin.[1]

---

[1] SEC. 1075.   Every railroad corporation in this State which now is, or may hereafter be, engaged in the transportation of persons or property, from one point in this State to another point in this State, shall give public notice of the regular time of starting and running its cars, and shall furnish sufficient accommodations for the transportation of all such passengers, baggage, mails and express freight as shall, within a reasonable time previous thereto, be offered for transportation at the place of starting, at the junctions of other railroads, and at the junction of branch railroads of the same system as herein defined, carrying passengers, and at the several stopping places; and shall, at all crossings and intersections of other railroads, where such other railroad and the railroad crossing the same are now, or may hereafter be made upon the same grade, and the character of the land at such crossing or intersection will admit of the same, erect, build, and maintain, either jointly with the railroad company whose road is crossed, or separately by each railroad company, a depot or passenger house and waiting room or rooms sufficient to comfortably accommodate all passengers

Concerning this section, and the requirement to stop trains at junction points, the bill sets out that the complainant has traffic rights over the Chicago, Burlington and Quincy Railway track between Cameron Junction and Kansas City; that the town of Lathrop is a town of about one thousand inhabitants, situated in Clinton County, Missouri, between Cameron Junction and Kansas City on said line of railway; that complainant, for the purpose of carrying on its business as a common carrier, at the said station of Lathrop stops a morning and evening passenger train each way, two west bound, and two east bound, and, in addition thereto, stops two passenger trains, one east bound and one west bound, which are local freight trains regularly carrying passengers. Complainant further sets forth that it runs a fast through passenger train between Chicago, Fort Worth, and Dallas, Texas, by means of connecting carriers in the State of

awaiting the arrival and departure of trains at such junction, or railroad crossing, and shall keep such depot or passenger house or rooms warm, lighted and open to the ingress and egress of all passengers for a reasonable time before the arrival and until after the departure of all trains carrying passengers on said railroad or railroads; and they are hereby required to stop all trains carrying passengers at the junction or intersection of other railroads, and they are further required to receive all passengers and baggage for, and to stop, on a flag or signal, all trains carrying passengers, at the junction of all branch railroads of the same system, which said branch railroads are eighteen miles or more in length and at the terminus of which is located any county seat town of any county in this State a sufficient length of time to allow the transfer of passengers, personal baggage, mails and express freight from the trains of railroads so connecting or intersecting; or they may mutually arrange for the transportation of such persons and property over both roads without change of cars; and they shall be compelled to receive all passengers and freight from such connecting, intersecting, or branch roads whenever the same shall be delivered to them. And every railroad company or corporation owning, operating or leasing any railroad in this State shall keep all its depots, stations, or passenger houses, whether located at the crossing or intersection of

Texas, and a fast through passenger train between Chicago and the Pacific coast by means of connecting carriers beyond the Territory of Oklahoma, neither of which stop at the station of Lathrop to take on or let off passengers; that said trains which do not stop at Lathrop are immediately preceded by trains that do stop there, and which are maintained for the purpose of collecting passengers from local stations and conveying them to nearby stations on the line of the road of the complainant, where both of said fast through trains do stop for the purpose of taking on and letting off passengers.

The complainant further avers that the tracks of the complainant cross and intersect with the tracks of the Atchison, Topeka and Santa Fe Railway Company at the said station of Lathrop; that the Atchison, Topeka and Santa Fe Railway runs two trains each way every day, all of which stop at the station of Lathrop, and which make close and direct connection with the trains which the

---

other roads or elsewhere, warm, lighted and open to the ingress and egress of all passengers a reasonable time before the arrival and until after the departure of all passenger trains on said railroad which stop or receive or discharge passengers at such depots, stations or passenger houses. Every railroad corporation or company which shall fail, neglect or refuse to comply with any or either one of the provisions of this section from and after the time the same shall become a law, shall, for each day said railroad corporation or company refuses, neglects or fails to comply therewith, shall forfeit and pay the sum of twenty-five dollars, which may be recovered in the name of the State of Missouri, to the use of the school fund of the county wherein said crossing, depot, station, passenger house or branch railroad is located; and it shall be the duty of the prosecuting attorney to prosecute for a recovery of the same. The term "railroad corporations," as used in this act, shall include the term "railway company and railway corporation."

Sec. 2. Inasmuch as the train service is very inconvenient and unsatisfactory in some places constitutes an emergency within the meaning of the constitution; therefore, This act shall take effect and be in force from and after its passage.

complainant stops at the station of Lathrop; that except under unusual circumstances passengers seldom find it convenient to change from the complainant's railway to that of the Atchison, Topeka and Santa Fe line at the station of Lathrop. Complainant avers that to stop the through interstate trains running between Chicago, Fort Worth and Dallas, Texas, and between Chicago and the Pacific coast would be a direct, unreasonable and unwarrantable interference with its interstate business, and that said through trains are maintained for and are essential to the purpose of transporting interstate passenger traffic, and for the carriage of the United States mails. The complainant avers that the facilities for the interchange of passengers at the station of Lathrop are amply sufficient to accommodate the public, and that the service is both convenient and satisfactory to the public. The bill further avers that if the said through trains are required to stop at all junctions with other railways and there interchange passengers with such road, their usefulness as through trains will be destroyed, and the interstate business of the complainant interfered with to an unwarranted extent without any corresponding benefit to the traveling public; that the law of March 19, 1907, as applied to said trains which do not stop at the station of Lathrop, is a serious burden upon interstate commerce so conducted by said trains, and an unlawful and unreasonable interference therewith, and in violation of the Constitution of the United States and the acts of Congress regulating commerce. Complainant avers that the act of March 19, 1907, requiring trains carrying passengers to stop at the junction or intersections of other roads for the purpose of interchanging passengers and baggage at such junction points, was not passed in the exercise of the police power of the State of Missouri to protect the traveling public, but solely for the purpose of increasing traveling facilities, and to provide a more convenient and satis-

factory train service at such junction points.  Complainant
avers that it installed an interlocking plant and an auto-
matic signal device at the intersection with the tracks of
the Atchison, Topeka and Santa Fe Railway at the station
of Lathrop, and thereby provided an absolutely safe
method for its through trains to pass over the tracks of
the Atchison, Topeka and Santa Fe road without stop-
ping.   The bill avers that Harry T. Herndon, as prosecut-
ing attorney for the county of Clinton, Missouri, threatens
to and will, unless enjoined, put in motion the special
provisions of the act of March 19, 1907, for the enforce-
ment of penalties of $25 per day since July 21, 1907,
which penalties in a short time would amount to many
thousands of dollars.

Complainant further avers that defendant John E.
Swanger, secretary of state of the State of Missouri, under
and by authority of said act of the State of Missouri, ap-
proved March 13, 1907, concerning the bringing of cases
by foreign corporations in the Federal courts, which act
is set forth in the margin [1] threatens to, and will, unless

---

[1] Be it enacted by the General Assembly of the State of Missouri, as
follows:

SEC. 1. If any foreign or non-resident railway corporation of what-
ever kind, incorporated, created and existing under the laws of any
other State, Territory or country, and doing business as a carrier of
freight or passengers from one point in this State, to another point in
this State, under the laws of this State, regulating or authorizing the
licensing of, or the issuing of a permit or a certificate of authority to,
or suffering or allowing any such corporation to enter or to do business
in this State, shall, without the consent of the other party, in writing,
to any suit or proceeding brought by or against it in any court of this
State, remove said suit or proceeding to any Federal court, or shall in-
stitute any suit or proceeding against any citizen of this State in any
Federal court, the license, permit, certificate of authority and all right
of such corporation and its agents to carry passengers or freight from
one point in this State to another point in this State shall forthwith
be revoked by the secretary of state, and its right to do such business
shall cease, and the secretary of state shall publish such revocation in

enjoined, cancel the complainant's certificate of the right to do business in the State of Missouri, and will take other steps necessary to revoke the license and permit as provided in the act of March 13, 1907, should the complainant file this, its bill of complaint, in the United States Circuit Court, and because of any attempt complainant

some newspaper of large and general circulation in the State, and such corporation shall not again be authorized or permitted to carry passengers or freight from one point in this State to another point in this State, or to do business as a carrier of passengers or freight of any kind from one point in this State to another point in this State at any time within five years from the date of such revocation or the cessation of such right. But the revocation of such license, permit, right, certificate of authority, or the cessation of such right, shall not be deemed to prohibit or prevent such corporation from carrying passengers or freight from a point within this State to a point without this State, or from a point without this State to a point within this State, or from making what are known as interstate shipments and transportation.

SEC. 2. If any corporation included in the provisions of this act shall carry, or attempt to carry, or hold itself out to carry passengers or freight of any kind from one point in the State to another without a license, permit or certificate of authority therefor first had and obtained from the State of Missouri—to be issued by the secretary of state—or after its license, permit, right or certificate of authority to carry passengers or freight of any kind from one point in this State to another point in this State, shall have been revoked or ceased, as provided for by the preceding section of this act, it shall forfeit and pay to the State of Missouri for each offense a penalty of not less than two thousand dollars nor more than ten thousand dollars, suit to be brought therefor in any court of competent jurisdiction by the attorney general or the prosecuting attorney of any county in the State in which such offense shall have been committed, and such offense shall be deemed to have been committed either in the county where such transportation originated or in the county where it terminated. And the governor may, whenever he shall deem it necessary, appoint special counsel to assist the attorney general or any prosecuting attorney to enforce or carry out the provisions of this act.

SEC. 3. All acts or parts of acts in conflict herewith are, in so far as they are in conflict, hereby repealed.

Approved March 13, 1907.

[Laws of Missouri of 1907, p. 174.]

may make to remove any case in a Federal court from any state court of the State of Missouri, and to bring any case in any Federal court against a citizen of the State of Missouri. The bill then sets out the coming of the complainant into the State of Missouri in accordance with the laws of the State, that it acquired property therein, which included many miles of railroad, depots, station grounds, shops and warehouses, terminals, rolling stock, and other equipment necessary to the maintenance and operation of its line located in the State of Missouri and at an assessed value of $3,252,775. The bill sets out the various particulars wherein it is contended that the act of March 13, 1907, is void under the Constitution of the United States, and the bill avers that if the complainant should attempt to remove into the Federal courts any case commenced in the state courts of Missouri, or should commence proceedings in any Federal court against a citizen of the State of Missouri, the defendant, as secretary of state of the State of Missouri, would deny the right of complainant to do business in the State of Missouri, and if the complainant attempted to carry on the same it would be subject to forfeit and to pay to the State of Missouri a penalty of not less than $2,000 or more than $10,000, to be recovered in any court in the State having jurisdiction. An injunction was prayed against the defendant Harry T. Herndon as prosecuting attorney of the county of Clinton, Missouri, requiring him to refrain from enforcing, or attempting to enforce, the provisions of the act of March 19, 1907, so far as it relates to the stopping of the trains aforesaid, at the crossing of the Atchison, Topeka and Santa Fe Railway at the station of Lathrop, Clinton County, Missouri, and from enforcing, or attempting to enforce, the penalties of the statute; and that the defendant John E. Swanger, secretary of state of the State of Missouri, be restrained from enforcing, or attempting to enforce, the provisions of the act of March 13, 1907,

providing for the revocation and cancelling of the complainant's charter because of the removal of cases from a state to a Federal court, or bringing suit in a Federal court against any citizen of the State of Missouri.

A demurrer was filed to the bill by both of the defendants, the same was overruled, and a final decree was entered enjoining the enforcement of the act of March 13, 1907, because of the beginning of the suits, or the removal of cases to Federal courts, and enjoining the enforcement of the act of March 19, 1907, so far as it relates to the complainant's said trains passing through Lathrop, or the stopping of such trains at the station of Lathrop, and enjoined the defendant prosecuting attorney of Clinton County, Missouri, from enforcing, or attempting to enforce, the provisions of said act as to stopping said trains, or enforcing the penalties provided for in that act for the failure to comply with the provisions thereof.

It is evident from the foregoing statement that the constitutional questions involved in this case are: First, whether under the act of March 19, 1907, the complainant can be compelled to stop its through trains, described in the bill, at the station of Lathrop, and whether such a statute, so far as it relates to interstate commerce trains, is void as an attempt to regulate interstate commerce, and imposes a burden thereon by state legislation. And, secondly, under the act of March 13, 1907, can the license and right of the complainant to do business in the State of Missouri be lawfully revoked because it has begun a suit, or may remove a suit, from a state court to a Federal court, complainant being a corporation organized in another State.

Before considering these questions we will notice some of the objections to the decree below made by the learned counsel for the State. It is asserted that the bill is multifarious, and that there is no right to join the defendants, the prosecuting attorney and secretary of state in the

same bill. But no objection to such joinder of the parties was specially taken, and it is well settled that an objection of this character must be promptly made. The proper way to raise such question is by special demurrer specifically directed to the objection. Street Fed. Equity Practice, vol. 1, § 936. It is true that a court may itself take the objection in extreme cases, when that course is essential to the necessary and proper administration of justice. But, as laid down in *Oliver* v. *Piatt,* 3 How. 333, 412 Mr. Justice Story, speaking for the court, says, " if the court can get to a final decree without serious embarrassment, it will do so," and, continues the learned justice: "*A fortiori*, an appellate court would scarcely entertain the objection, if it was not forced upon it by a moral necessity." No such case exists here. Certainly, in the absence of a specific objection, there is no difficulty in hearing at the same time the case against the secretary of state and the prosecuting attorney. The bringing of the suit against the prosecuting attorney in the Federal court, if the statute of March 19, 1907, is to be carried out, will forfeit the complainant's right to do business within the State, and we see no reason why the right to declare such forfeiture may not be considered with the case against the prosecuting attorney. We find no merit in the objection of multifariousness.

As to the objection that the suit is one against the State, we think no discussion is necessary, and content ourselves with a reference to the late cases in this court to that point. *Ex parte Young,* 209 U. S. 123; *Western Union Telegraph Co.* v. *Andrews,* 216 U. S. 165.

The act of March 19, 1907, requiring the stopping of certain trains, upon its face seems to require the stoppage of all passenger trains at the junction or intersection of other roads. But it is contended by counsel for the State that this statute is but an amendment of former statutes, and that the requirement to stop trains carrying pas-

sengers, as qualified by the subsequent language of the act, means to stop such trains for a sufficient length of time to allow the transfer of passengers, personal baggage, mails and express from the trains of the roads connecting or intersecting to the trains of the other road, and that, therefore, the act applies only to the operation of trains actually carrying such passengers, personal baggage, mails and express as are destined for points on the connecting road, and does not require the stoppage of all trains carrying passengers, as is set out in the bill. And this conclusion, it is said, must necessarily follow because of the construction given to the statute prior to its amendment on March 19, 1907. *State ex rel.* v. *The W. St. L. & P. Ry. Co.*, 83 Missouri, 148; *Logan* v. *H. & St. J. R. R. Co.*, 77 Missouri, 666; *State ex rel.* v. *Railroad*, 105 Mo. App. 212.

The contention is that the amendment of 1907 has only the effect to bring into the statute certain provisions as to branch railroads. Assuming this to be a correct interpretation of this statute, and that it only requires the stoppage of trains at Lathrop carrying passengers destined for points on the intersecting railroad, or to take up passengers there destined for points on complainant's road, the question remains, Would the requirement of the act of March 19, 1907, to stop the through trains described in the bill, for such purpose and under the circumstances set forth, be an unlawful attempt to regulate interstate commerce and impose an unlawful burden thereon?

The extent of the right to control through interstate transportation of passengers by state legislation, or under orders of a commission authorized by the State, has been recently before this court. *Miss. R. R. Co.* v. *Illinois Central R. R. Co.*, 203 U. S. 335; *Atlantic Coast Line Co.* v. *Wharton*, 207 U. S. 328.

The principle to be deduced from these cases is, that where a railroad company has already provided ample

facilities for the adequate accommodation of the traveling public such as may be proper and reasonable at any given point, and operates interstate commerce trains, carrying passengers through the same places, at which such interstate trains do not stop, a state regulation which requires the stopping of such interstate trains, in addition to ample facilities already provided, to the detriment and hindrance of interstate traffic, is an unlawful regulation and burden upon interstate commerce. Applying the principles thus settled and taking the allegations of the bill as true, which we must do in view of the fact that the case was decided upon demurrer, we think that construing the statute so as to require the stoppage of the through trains whenever any persons might seek to avail themselves thereof, in order to permit a transfer of passengers from one road to the other upon such trains, would be an unnecessary and unlawful burden upon interstate traffic. The averment of the bill is that the business is already amply provided for in the other trains of the company and the connecting road, and the serious detriment to the interstate carrying business from the requirement to stop the through trains described for the purpose of permitting such transfers, is fully set forth in the bill, and admitted by the demurrer.

It is true that the bill avers that few persons require transfer at such connecting point, but if passengers have the right under this statute to require the stoppage of such through trains at Lathrop whenever they may desire to avail themselves of such privilege, serious inconvenience would result to the interstate traffic in question. It is to be remembered that this statute is not of that class passed in the exercise of the police power of the State for the promotion of the public safety and requiring the stoppage of trains by one railroad before crossing the tracks of another railroad—this statute, as its second section shows, was passed for the purpose of providing

greater facilities of travel, and not for the protection of life and limb. We therefore reach the conclusion that the Circuit Court did not err in granting the injunction so far as it relates to the enforcement of the act of March 19, 1907, relating to the stoppage of the interstate commerce trains at the station at Lathrop.

As to the validity of the act of March 13, 1907, forfeiting the right of the company to do business in the State of Missouri, and subjecting it to penalties in case it should bring a suit in the Federal courts, or remove one from the state courts to the Federal courts, but little need be said. This is so because of the cases decided at this term involving contentions kindred to the one made in this case. See *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1; *Pullman Co.* v. *Kansas,* 216 U. S. 56; *Ludwig* v. *Western Union Tel Co.,* 216 U. S. 146; *Southern Railway Co.* v. *Green,* 216 U. S. 400.

Applying the principles announced in those cases, it is evident that the act in controversy cannot stand in view of the provisions of the Constitution of the United States. Moreover, this is not a case where the State has undertaken to prevent the coming of the corporation into its borders for the purpose of carrying on business. The corporation was within the State, complying with its laws, and had acquired, under the sanction of the State, a large amount of property within its borders, and thus had become a person within the State within the meaning of the Constitution, and entitled to its protection. Under the statute in controversy a domestic railroad company might bring an action in the Federal court, or in a proper case remove one thereto, without being subject to the forfeiture of its right to do business, or to the imposition of penalties provided for in the act. In all the cases in this court, discussing the right of the States to exclude foreign corporations, and to prevent them from removing cases to the Federal courts, it has been conceded that

while the right to do local business within the State may not have been derived from the Federal Constitution, the right to resort to the Federal courts is a creation of the Constitution of the United States and the statutes passed in pursuance thereof.

It is enough now to say that within the principles decided at this term, in the cases cited above, the act of March 13, 1907, as applied to the complainant railroad company, in view of the admitted facts set out in the bill in this case, is unconstitutional and void. We find no error in the decree granted in the Circuit Court, and the same is affirmed.

*Affirmed.*

THE CHIEF JUSTICE concurs in the result.