SEPARATE CONCURRING OPINION.
BROWN, J.
— I agree with my learned associate Judge Graves, that tbe judgment of the trial court should be affirmed; but I do not concur in all that he has written in arriving at that conclusion.
In order to affirm the judgment, it is necessary to construe the word lands where it occurs the second time in section 1, Laws of 1851, page 64, to mean property, thus embracing both real and personal property.. It *320 is also necessary to find that said Act of 1851 was not repealed by subsequent changes in, our organic law.
The word “land comprehends all things of a permanent, substantial nature, being a word of very extensive signification.” [Anderson’s Law Dictionary.] As ordinarily used, this word does not embrace personal property, and whether or not as found in the Act of 1851 its meaning should be so enlarged as to include personal property is the main issue before us.
To ascertain the true intention of the lawmakers of 1851, it is necessary to consider their surroundings and the conditions which called for the enactment of the law under consideration. An eminent authority has aptly said: ‘ ‘ All laws must be executed according to the sense and meaning they imported at the time of their passage.” [Endlich on Interpretation of Statutes, sec. 85, p. 115.] Words used in a statute enacted sixty years ago do not always convey the same meaning as when used in a statute of more recent date.
In the year of 1851 most of the-surplus wealth of our State was invested in lands and slaves, while bonds and stocks, now frequently used in endowing colleges, were very scarce; hence, I think there is sound reason for the presumption that by the use of the word lands in the act under consideration, the General Assembly intended to embrace every kind of surplus property which benevolent citizens might desire to donate to the cause of education, a cause then sorely in need of financial aid in our State.
Another reason which impels me to hold that the word lands as used in the Act of 1851, supra, was intended to include personal property, is that the holding of large tracts of land by corporations, whether such corporations be formed for commercial, educational or religious purposes, has always been exceedingly obnoxious to the public, as tending to prevent citizens from acquiring* homes • and I cannot conceive of any cause which could have created an intent on the *321 part of the General Assembly to grant the right to an educational corporation to acquire and hold lands exempt from taxation and at the same time impose a tax on its personal property, the ownership of which does not materially contravene the rights or welfare of the people.
To follow the strict letter of this act would result in taxing the funds which defendant may have obtained by the sale of non-taxable lands. This would encourage defendant to invest its endowment funds wholly in lands, .to the end that it might thereby escape taxation; and I cannot bring myself to believe that any General Assembly was so unmindful of the public welfare as to intend such a result.
I am aware that we are not permitted to modify or enlarge the letter of a statute except in extreme cases, when it is necessary to do so in order to effectuate its true intent, or when, to follow the letter of the law would place upon it an absurd or impractical construction. [Cole v. Skrainka, 105 Mo. 303; State ex rel. v. Railroad, 105 Mo. App. 207.] In the case at bar, to hold that by the Act of 1851 it was intended to exempt the real estate of the defendant, and-leave its personal property subject to the burdens of taxation, would amount to convicting the General Assembly of enacting 'a very absurd law. There are many valuable rules and maxims for construing statutes-, but all ■ other guides must give way to the one paramount rule that courts should give effect to the real intent of the lawmakers. [Keeney v. McVoy, 206 Mo. l. c. 65.]
The Act of 1851, supra, purports to be a public act and provides that “all the lands that may hereafter be granted or devised to said .college, or any other institution of learning in this State, for the benefit of education, be, and the same are hereby exempted from all taxes.” This language conveys to my mind an intent to encourage donations not only to defendant, but *322 also to other educational institutions then in existence. It is true that the title to the act names no institution of learning except defendant, hut a careful examination of the Constitution in force in 1851 reveals the fact that no titles for legislative enactments were then required.
The framers of the Constitution of 1875 evidently deemed the holding of large tracts of land by corporations to be inimical to the welfare of the people, and sought to discourage such holdings. [Sec. 6 and 7, art. 10, and sec. 7, art. 12, Constitution of 1875.] However, I do not believe that these provisions of our present organic law would create a right in the State to tax personal property of a corporation chartered for educational purposes before the Act of 1851 was passed. If this suit involved an attempt to collect taxes from real estate acquired by defendant after the adoption of the Constitution of 1875, a very different question would be presented, but one upon which it is not now necessary to express an opinion.
The defendant has the right to acquire personal property for the purposes expressed in its charter and hold same free from the burdens of general taxation; and as this suit only seeks to collect taxes on personal property of defendant, the judgment of the trial'court denying such recovery, is for the right party and should he affirmed.