Marvine **MARKHAM**, Appellant,

v.

**CITY OF NEWPORT NEWS**, a municipal corporation, Appellee.

No. 8216.

United States Court of Appeals Fourth Circuit.

Argued Jan. 13, 1961.

Decided June 19, 1961.

Stanley E. Sacks and Harold M. Stern, Norfolk, Va. (Sacks & Sacks, Norfolk, Va., on the brief), for appellant.

Harry L. Nachman, City Atty., Newport News, Va., for appellee.

Before HAYNSWORTH and BOREMAN, Circuit Judges, and FIELD, District Judge.

HAYNSWORTH, Circuit Judge.

Whether a state may prevent resort to the federal diversity jurisdiction for enforcement of a right created by the state is the question. The District Court held that it could.[1] We disagree.

The plaintiff, a citizen of California, commenced this action in the United States District Court for the Eastern District of Virginia against the City of Newport News, Virginia. She alleged that while driving her automobile on a street in Newport News, she and her vehicle fell into a sewer manhole which the city had wrongfully uncovered and left unguarded. She sought damages for injuries she claimed to have sustained.

Though all of the requisites of the federal diversity jurisdiction are present, the action was dismissed on the basis of a Virginia statute providing that no tort action against a city or other political subdivision of the Commonwealth shall be instituted "except in a court of the Commonwealth established under or pursuant to the Constitution of Virginia and having jurisdiction and venue

---

1. Markham v. City of Newport News, D.C.E.D.Va., 184 F.Supp. 659.

\* \* \*." [2]  The District Court was of the opinion that the statute did more than control venue of actions commenced in Virginia's courts, was intended to prevent resort to the federal diversity jurisdiction and was a valid enactment binding upon the District Court.

■ We agree with the District Judge's interpretation of the statute. The fact that it was subsequently codified as § 8–42.1 of Chapter 3 [3] of Title 8 of Virginia's code in disregard of the plain direction of the General Assembly that it be codified as § 8–757.1 of chapter 34,[4] cannot alter the clearly expressed intention of the General Assembly. The limitation upon maintenance of the action in any court other than one established under Virginia's constitution so clearly excludes the courts of the United States that we cannot put any other construction upon it. A United States District Court may be "one of the 'proper courts at the county of Dauphin' " [5] or "a court of competent jurisdiction in Travis County, Texas," [6] but the District Court for the Eastern District of Virginia cannot be said to be "a court of the Commonwealth established under or pursuant to the Constitution of Virginia." [184 F. Supp. 661.]

We come then to the effectiveness of the statute to achieve its purpose.

■ The jurisdiction of the United States District Courts is fixed by the Congress, its acts being in implementation of Article 3, Section 2 of the United States Constitution. The Constitution provides that the judicial power of the United States shall extend to controversies between citizens of different states. Congress has authorized exercise of that power if the amount in controversy exceeds a specified amount, now $10,000.[7] The cases in the diversity jurisdiction involve rights created by a state, rights which are subject to definition, limitation and, frequently, negation by the state. The fact that the substantive right is a creature of the state, however, does not suggest that the state may deny the judicial power the states conferred upon the United States when they ratified the Constitution or thwart its exercise within the limits of congressional authorization. In determining its own jurisdiction, a District Court of the United States must look to the sources of its power and not to acts of states which have no power to enlarge or to contract the federal jurisdiction.

■ It became axiomatic, therefore, as will be shown presently, that whenever there was a substantive right enforceable in a judicial proceeding in any court of the state, it was enforceable in the courts of the United States if the controversy was between citizens of different states and involved the minimum amount of money.

Newport News, nevertheless, relying on Detroit v. Osborne, 1890, 135 U.S. 492,

2. As enacted in 1958, Acts 1958, c. 520, the statute was entitled and provided in pertinent part:

"*An Act to amend the Code of Virginia by inserting in Chapter 34 of Title 8 a section numbered 8–757.1, relating to courts in which claims, suits or proceedings may be asserted, instituted, or maintained against counties, cities, towns, districts, boards, commissions, officers, agencies and other political subdivisions of the Commonwealth and of counties, cities and towns.*

"No claim, suit or proceeding for damages based on a tort shall be asserted, instituted or maintained against any county, city, town, district, board, commission, officer acting in his official capacity pursuant to the Constitution and laws of the Commonwealth, agency or other political subdivision of the Commonwealth or of any county, city or town except in a court of the Commonwealth established under or pursuant to the Constitution of Virginia and having jurisdiction and venue of such claim, suit or proceeding. \* \* \* "

3. Chapter 3 is entitled, "Venue."

4. Chapter 34 is entitled, "Recovery of Claims against the State."

5. See Gerr v. Emrick, 3 Cir., 283 F.2d 293, 298.

6. See Reagan v. Farmer's Loan & Trust Company, 1894, 154 U.S. 362, 14 S.Ct. 1047, 1048, 38 L.Ed. 1014.

7. 28 U.S.C.A. § 1332.

10 S.Ct. 1012, 34 L.Ed. 260 argues strenuously that the existence of the right is a matter of local law and that state negation of the right was recognized as controlling in federal courts long before Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. This leads the city to the conclusion that the state may condition enforcement of the right in any way she sees fit, including a limitation of judicial proceedings to her own courts. Virginia, of course, may impose conditions precedent to enforcement of the right in any court. It has provided that an action such as this may not be maintained unless written notice of the accident is given to the city within sixty days after accrual of the cause of action.[8] Power to impose conditions precedent which will operate in the same way and lead to the same result whether the action be brought in the courts of the state or those of the United States does not carry with it power to oust the federal jurisdiction.[9] However extensive the power of the state to deal with the substantive right, it has no power to defeat the jurisdiction of the federal courts. As the Supreme Court said:

> " * * * In all cases, where a general right is thus conferred, it can be enforced in any Federal court within the State having jurisdiction of the parties. It cannot be withdrawn from the cognizance of such Federal court by any provision of State legislation that it shall only be enforced in a State court. * * *" Railway Company v. Whitton's Administrator, 1871, 13 Wall. 270, 286, 80 U.S. 270, 286, 20 L.Ed. 571.

This and similar questions have been frequently before the Supreme Court of the United States, particularly in the latter part of the last century.

It arose first in a context of state statutes requiring claims against the estates of insolvents and decedents to be proven in the particular court of the state having supervisory jurisdiction over settlement and administration of the estate. The Supreme Court consistently held that the question of debt or no debt was one for judicial determination and that actions to determine that question could be maintained in the courts of the United States when the requisites of the diversity jurisdiction were present.[10] Neither considerations of convenience in the administration of estates nor the restrictions of the state statutes could defeat the jurisdiction conferred upon the courts of the United States by the Constitution and the acts of Congress.

When the controversy was between citizens of different states, the right to remove to a federal court a condemnation proceeding to determine just compensation was upheld notwithstanding the fact that the state's exercise of its power of eminent domain was an attribute of its sovereignty and despite state statutes providing for such proceedings in designated state courts.[11]

8. Code of Virginia, 1950, § 8–653.

9. Atchison, Topeka & Santa Fe Railway Company v. Sowers, 1909, 213 U.S. 55, 29 S.Ct. 397, 53 L.Ed. 695.

10. Suydam v. Broadnax, 1840, 14 Pet. 67, 39 U.S. 67, 10 L.Ed. 357; Union Bank of Tennessee v. Vaiden et al. (Jolly's Adm'rs), 1855, 18 How. 503, 59 U.S. 503, 15 L.Ed. 472; Hyde v. Stone, 1857, 20 How. 170, 61 U.S. 170, 15 L.Ed. 874; Green's Administratrix v. Creighton, 1859, 23 How. 90, 64 U.S. 90, 16 L.Ed. 419; Payne v. Hook, 1868, 7 Wall. 425, 74 U.S. 425, 19 L.Ed. 260; Hess v. Reynolds, 1885, 113 U.S. 73, 5 S.Ct. 377, 28 L.Ed. 927; Clark v. Bever, 1891, 139 U.S. 96, 11 S.Ct. 468, 35 L.Ed. 88.

11. Boom Company v. Patterson, 1878, 8 Otto 403, 98 U.S. 403, 25 L.Ed. 206; Searl v. School District No. 2, 1888, 124 U.S. 197, 8 S.Ct. 460, 31 L.Ed. 415; Madisonville Traction Company v. Saint Bernard Mining Company, 1905, 196 U.S. 239, 25 S.Ct. 251, 49 L.Ed. 462; Mason City & Fort Dodge Railroad Company v. Boynton, 1907, 204 U.S. 570, 27 S.Ct. 321, 51 L.Ed. 629; Chicago, Rock Island & Pacific Railroad Co. v. Stude, 1953, 346 U.S. 574, 74 S.Ct. 290, 98 L.Ed. 317; County of Allegheny v. Frank Mashuda Co., 1959, 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163.

A state may exclude a foreign corporation and, generally, it may impose terms upon which it will permit a foreign corporation to do intrastate business within its borders. However, it may not condition the right to do business upon surrender of the foreign corporation's right to invoke the federal diversity jurisdiction.

The first case presenting this question involved a Wisconsin statute requiring, as a condition of transacting business in that state, a foreign fire insurance company to agree in writing that it would not remove to a federal court any action commenced against it in Wisconsin's courts. A company which had signed such an agreement undertook the removal of an action against it in violation of its agreement. The Wisconsin court denied the removal petition, but the Supreme Court reversed, holding that neither the statute nor the agreement was an effective deprivation of the company's right of removal.[12] Subsequently it was held that Iowa could not impose its penalties when a foreign corporation, refusing to sign such an agreement, conducted its business in Iowa without having qualified.[13]

For a time the decisions in the Supreme Court were in conflict as to whether a state might revoke the license of a foreign corporation which exercised its right to resort to the federal diversity jurisdiction. In three cases it was held that it could withdraw its permission to do business for that reason, though in each case it was recognized that the state was powerless to prevent the removal of any action commenced in its courts which was removable under federal law.[14] There was in parallel a conflicting line of decisions that a state could not impose such a penalty upon resort to the federal diversity jurisdiction.[15] The conflict was settled in a holding that the state could not revoke its permit because a licensed foreign corporation exercised its right to invoke the federal diversity jurisdiction.[16]

The Supreme Court has held ineffective state attempts to limit tort actions to her own courts. Wisconsin sought to limit her wrongful death action, which she could have repealed entirely, to her own courts. The limitation was held not to be binding upon federal courts sitting in Wisconsin, which, when adjudicating a cause of action arising under the Wisconsin statute, should ignore the limitation.[17] The Territory of New Mexico, finding that actions for personal injury and wrongful death arising in New Mexico customarily were being prosecuted in the courts of other states with resulting oppression of the business interests of the territory and derogation of the dignity of her courts, sought to limit enforcement of such rights created by the territory to her own courts. The Supreme Court held that the courts of Texas could enforce the substantive rights

12. Insurance Company v. Morse, 1874, 20 Wall. 445, 87 U.S. 445, 22 L.Ed. 365.

13. Barron v. Burnside, 1886, 121 U.S. 186, 7 S.Ct. 931, 30 L.Ed. 915.

14. Doyle v. Continental Insurance Company, 1876, 4 Otto 535, 94 U.S. 535, 24 L.Ed. 148; Cable v. United States Life Insurance Company, 1903, 191 U.S. 288, 24 S.Ct. 74, 48 L.Ed. 188; Security Mutual Life Insurance Company v. Prewitt, Insurance Commissioner of State of Kentucky, 1906, 202 U.S. 246, 26 S.Ct. 619, 50 L.Ed. 1013.

15. Southern Pacific Company v. Denton, 1892, 146 U.S. 202, 13 S.Ct. 44, 36 L.Ed. 942; Herndon v. Chicago, Rock Island & Pacific Railway Company, 1910, 218 U.S. 135, 30 S.Ct. 633, 54 L.Ed. 970; Harrison v. St. Louis & San Fran-cisco Railroad Company, 1914, 232 U.S. 318, 34 S.Ct. 333, 58 L.Ed. 621; Donald v. Philadelphia & Reading Coal & Iron Company, 1916, 241 U.S. 329, 36 S.Ct. 563, 60 L.Ed. 1027.

16. Terral v. Burke Construction Company, 1922, 257 U.S. 529, 42 S.Ct. 188, 66 L.Ed. 352. Doyle and Prewitt, note 14, supra, were expressly overruled. It has been held, however, that a state may require a foreign public service corporation to incorporate under its laws in order to do business. Railway Express Agency, Incorporated v. Commonwealth of Virginia, 1931, 282 U.S. 440, 51 S.Ct. 201, 75 L.Ed. 450.

17. Railway Company v. Whitton's Administrator, 1871, 13 Wall. 270, 80 U.S. 270, 20 L.Ed. 571.

subject to the conditions precedent of notice and of time limitations imposed by New Mexico, but without regard to her attempt to restrict the jurisdiction of the courts of other states.[18] Held equally ineffective was a similar attempt by Alabama to restrict to her own courts enforcement of a favorable right of action she created for the benefit of employees sustaining personal injuries because of defects in the employer's premises or equipment.[19]

The same question has arisen in actions against political subdivisions of a state. Statutes requiring actions to collect upon or enforce securities issued by subdivisions of the state be brought in courts of the state have been held ineffective to restrict the federal diversity jurisdiction.[20]

From all of these cases it is apparent that a court, in determining its own jurisdiction, must look to the constitution and laws of the sovereignty which created it. The laws of a state cannot enlarge or restrict the jurisdiction of the federal courts or those of any other state. It necessarily follows that whenever a state provides a substantive right and a remedy for its enforcement in a judicial proceeding in any state court, a judicial controversy involving the right may be adjudicated by a United States District Court if it has jurisdiction under the Constitution and laws of the United States.[21]

A state enjoying the protection of the Eleventh Amendment to the Constitution of the United States, of course, may consent to be sued in her own courts without waiving her immunity to suits in the federal courts,[22] but the Eleventh Amendment does not extend to cities.[23]

18. Atchison, Topeka & Santa Fe Railway Company v. Sowers, 1909, 213 U.S. 55, 29 S.Ct. 397, 53 L.Ed. 695. Indeed, a state constitutionally cannot close the doors of its courts to the enforcement of transitory causes of action arising under the laws of another state. Hughes v. Fetter, 1951, 341 U.S. 609, 71 S.Ct. 980, 95 L. Ed. 1212.

19. Tennessee Coal, Iron & Railroad Company v. George, 1914, 233 U.S. 354, 34 S.Ct. 587, 58 L.Ed. 997.

20. Cowles v. Mercer County, 1868, 7 Wall. 118, 74 U.S. 118, 19 L.Ed. 86; Lincoln County v. Luning, 1890, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766; Chicot County v. Sherwood, 1893, 148 U.S. 529, 13 S.Ct. 695, 37 L.Ed. 546; see, also, Reagan v. Farmer's Loan & Trust Company, 1894, 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014; Smyth v. Ames, 1898, 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819, actions to enjoin enforcement of railroad rates prescribed by the state where the state statute provided that such proceedings should be brought in a court of the state.

21. This principle is also illustrated by cases upholding the federal diversity jurisdiction in controversies cognizable in the probate courts of a state if the controversy is judicial in nature, as when the validity of a will is in issue. Payne v. Hook, 1868, 7 Wall. 425, 74 U.S. 425, 19 L.Ed. 260. See: Gaines v. Fuentes,

1875, 2 Otto 10, 92 U.S. 10, 23 L.Ed. 524; Ellis v. Davis, 1883, 109 U.S. 485, 3 S.Ct. 327, 27 L.Ed. 1006.

22. Smith v. Reeves, 1900, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140; Chandler v. Dix, 1904, 194 U.S. 590, 24 S.Ct. 766, 44 L.Ed. 1129; Burrill v. Locomobile Company, 1922, 258 U.S. 34, 39, 42 S. Ct. 256, 66 L.Ed. 450 dictum; State Highway Commission of Wyoming v. Utah Construction Company, 1929, 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 dictum; Great Northern Life Insurance Co. v. Read, Insurance Commissioner, 1944, 322 U.S. 47, 64 S.Ct. 873, 88 L. Ed. 1121; Ford Motor Co. v. Department of Treasury of Indiana, 1945, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389; Kennecott Copper Corp. v. State Tax Commission, 1946, 327 U.S. 573, 66 S. Ct. 745, 90 L.Ed. 862; Petty v. Tennessee-Missouri Bridge Commission, 1959, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 dictum; cf. Murray v. Wilson Distilling Co., 1909, 213 U.S. 151, 172, 29 S.Ct. 458, 53 L.Ed. 742.

Contra: Dictum in City Bank Farmers' Trust Co. v. Schnader, Attorney General of Pennsylvania, 1933, 291 U.S. 24, 28, 54 S.Ct. 259, 78 L.Ed. 628.

23. Cowles v. Mercer County, 1868, 7 Wall. 118, 74 U.S. 118, 19 L.Ed. 86; Lincoln County v. Luning, 1890, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766; Chicot County v. Sherwood, 1893, 148 U.S. 529, 13 S.Ct.

These principles are so firmly established that Judge Parker speaking for this court in Popp v. Archbell, 4 Cir., 203 F.2d 287, 288, emphatically said, to illustrate a point, that a state statute limiting suits against municipalities to a particular state court could not defeat the federal diversity jurisdiction. There the court was immediately concerned with the effect of a state statute providing that after a nonsuit no new action could be commenced in any court other than that in which the nonsuit had been taken. In holding the statute did not prevent maintenance of a second action in a federal court after a nonsuit in a state court, it was said:

> " * * * it is perfectly clear that the statute was intended to regulate procedure and practice in the courts of the state, see Barrett v. Virginian R. Co., 250 U.S. 473, 39 S.Ct. 540, 63 L.Ed. 1092, and was not intended to limit, as indeed it could not limit, the jurisdiction of courts of the United States. It will be noted that the effect of the statute is merely to limit the venue of any new action brought on the cause of action which has been nonsuited; and, of course, a state venue statute can have no application to courts of the United States. We look to state law to determine the substantive rights of the parties, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188;

but, where under state law there is a cause of action of which any state court would have jurisdiction, there is jurisdiction in the appropriate federal district court to entertain it if the requisites of federal jurisdiction are present. Singer Sewing Machine Co. of New Jersey v. Benedict, 229 U.S. 481, 486, 33 S.Ct. 942, 57 L.Ed. 1288. *A statute limiting the right to entertain the suit in the court in which nonsuit was taken no more ousts the jurisdiction of the federal court than does a statute limiting the right to entertain a suit against a municipal corporation to a designated court of the county in which the corporation is situate.* The case, we think, is one for the application of the ordinary rule that a nonsuit taken without prejudice in a state court does not bar a subsequent suit on the same cause of action in a federal court. Southwestern Greyhound Lines v. Buchanan, 5 Cir., 126 F.2d 179."

The District Court recognized that a federal court would not have "followed" such a state statute prior to Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. After referring to a number of cases following Erie,[24] and particularly to those cases holding that a right which is unenforceable in a state court would not be enforced in a federal court sitting, in effect,

695, 37 L.Ed. 546; Graham v. Folsom, 1906, 200 U.S. 248, 26 S.Ct. 245, 50 L. Ed. 464; Port of Seattle v. Oregon & Washington Railroad Company, 1921, 255 U.S. 56, 70, 41 S.Ct. 237, 65 L.Ed. 500. See Boise Artesian Hot & Cold Water Company v. Boise City, 1909, 213 U.S. 276, 287, 29 S.Ct. 426, 53 L.Ed. 796; Singer Sewing Machine Company of New Jersey v. Benedict, Treasurer of Denver, Colorado, 1913, 229 U.S. 481, 486, 33 S.Ct. 942, 57 L.Ed. 1288; cf. Hopkins v. Clemson Agricultural College of South Carolina, 1911, 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890, and the dissenting opinion of Mr. Justice Cardozo in Ashton v. Cameron County Water Improvement District No. One, 1936, 298

U.S. 513, 542, 56 S.Ct. 892, 80 L.Ed. 1309.

24. Cities Service Oil Co. v. Dunlap, 1939, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196; Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079; Ragan v. Merchants Transfer & Warehouse Co., 1949, 337 U.S. 530, 69 S. Ct. 1233, 93 L.Ed. 1520; Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U. S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528; Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Bernhardt v. Polygraphic Company of America, Inc., 1956, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199.

as a court of that state,[25] he concluded that the Erie doctrine made Virginia's statute a governing restriction upon the exercise of the diversity jurisdiction.

█ The Erie doctrine does not extend to matters of jurisdiction or, generally, to matters of procedure. Its basic philosophy is that a federal court exercising its diversity jurisdiction to adjudicate rights created by the state sits as another court of that state and should reach the same result as the state courts would reach in deciding the identical issue. It is conformity in result which is required. A nonresident litigant in resorting to the federal diversity jurisdiction should obtain the same relief a resident litigant asserting the same cause of action would receive in the state courts. This doctrine led to the decisions that a federal court should not award a deficiency judgment in a foreclosure action if the courts of the state in which it sits are prohibited by statute from doing so [26] and that a federal court should not open its doors to a foreign corporation to which the courts of the state were closed because of its having done business in the state without qualifying under the laws of the state.[27]

To the extent it may be said that such cases require a federal court to refrain from exercising its jurisdiction, it is a rational development of the Erie doctrine and a requisite one if the result of the litigation in the federal court is to be the same as in the state courts. A non-resident seeking the foreclosure of a North Carolina mortgage should receive in the federal court in that state as much relief, but no more, than the resident mortgagee who had no choice but to go into North Carolina's courts where a deficiency judgment was unobtainable.

It would be quite foreign to the Erie doctrine, however, to apply a state statute in such a way as to deny all relief in a federal court to a nonresident plaintiff on a cause of action which, clearly, the state courts would recognize and enforce. Erie requires that the federal court grant or withhold relief as the state courts would. It does not require relegation of the diversity jurisdiction to the mercies of the legislatures of fifty separate states.

Reversed.

25. Angel v. Bullington, 1947, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832; Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524.

26. Angel v. Bullington, 1947, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832. But see Barrow Steamship Company v. Kane, 1898, 170 U.S. 100, 112, 18 S.Ct. 526, 42 L.Ed. 964.

27. Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524.