Regina YARBER, Phyllis Oram, Joyce E. Williams, Frances Seamon, Appellees,

v.

ALLSTATE INSURANCE COMPANY, Physical Measurements, Inc., Appellants.

and

Robert Borden Miller, Jr., Defendant.

No. 81–1386.

United States Court of Appeals, Fourth Circuit.

Argued July 15, 1981.

Decided March 19, 1982.

Fred C. Alexander, Jr., Alexandria, Va. (Boothe, Prichard & Dudley, Alexandria, Va., Francis M. Gregory, Jr., Sutherland, Asbill & Brennan, Paul Martin Wolff, Williams & Connolly, Washington, D. C., on brief), for appellants.

Michael Mays, Fairfax, Va. (Kenneth R. Weiner, Weiner, Weiner & Weiner, P. C., Fairfax, Va., on brief), for appellees.

Before PHILLIPS, MURNAGHAN and ERVIN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

█ Virginia law permits a plaintiff to take one voluntary nonsuit without prejudice to recommencement of the same action and, in a saving provision, gives a six-months grace period following the nonsuit within which the action may be recommenced free of the bar of any limitation period that would otherwise have run, subject only to the condition that the action be recommenced in the same state court in which the nonsuit was taken. The issue on this appeal is whether a federal court sitting in diversity must honor Virginia's restriction of the court within which a nonsuited plaintiff may recommence in order to invoke the saving provision. Because we construe the restriction to be an integral part of the several policies served by Virginia's statutes of limitations, we hold that it must be applied in these consolidated federal diversity actions. Accordingly, we find error in the district court's contrary conclusion, and on that basis reverse and remand for entry of a judgment dismissing the plaintiffs' actions as time-barred by the duly pleaded statute of limitations.

## I

As a critical feature of that state's voluntary nonsuit procedure,[1] Va.Code § 8.01–229(E)(3) (Cum.Supp.1981) provides:

If a plaintiff suffers a voluntary nonsuit as prescribed in § 8.01–380 the statute of limitation with respect to such action shall be tolled by the commencement of the nonsuited action, and the plaintiff may recommence his action within six months from the date he suffers such nonsuit, or within the original period of limitation, whichever is longer.

The operation of this basic tolling and saving provision is, however, expressly conditioned upon a special venue restriction found in the cross-referenced section, Va. Code § 8.01–380 A, which provides in pertinent part:

After a nonsuit no new proceeding on the same cause of action or against the same party shall be had in any court other than that in which the nonsuit was taken, unless that court is without jurisdiction, or not a proper venue, or other good cause be shown for proceeding in another court.

On December 6, 1979, each of the four plaintiffs in the instant actions commenced an action in the Circuit Court of Fairfax County, Virginia, against defendants Allstate Insurance Company (Allstate), Physical Measurements, Inc. (PMI), and Robert Miller, Jr. The actions arose out of physical examinations conducted by Miller on or before October 24, 1978, which were part of each plaintiff's application for employment with Allstate. Plaintiffs later learned that Miller was not a licensed physician and they sued defendants for assault, battery, and gross negligence resulting in personal injury.

█ On January 30, 1981, over defendants' objections, plaintiffs took voluntary nonsuits in the state actions. On February

---

1. The basic procedure is spelled out in Va.Code § 8.01–380 (1977). Other aspects of its operation relevant to decision here are developed in later parts of this opinion.

11, 1981, they filed complaints, invoking diversity jurisdiction, in the U. S. District Court for the Eastern District of Virginia asserting the same causes of action alleged in the state court suits. Defendants Allstate and PMI [2] moved to dismiss the federal court actions for lack of subject matter jurisdiction [3] and as time-barred by the concededly relevant two-year statute of limitations, Va.Code § 8.01–243(A) (1977). Unless first tolled by commencement of the nonsuited actions and further saved by the grace period provided by Virginia law, the two-year statute had run between the time the state court actions were commenced and the time the present federal actions were commenced.[4]

After consolidating the actions for pretrial proceedings, the district court ruled that it had subject matter jurisdiction [5] and that the suits were not time-barred because the six-months grace period following voluntary nonsuits that is provided by Va.Code § 8.01 229(E)(3) (Cum.Supp.1981), had not expired when these federal actions were commenced.[6] In the district court's view, the special venue restriction of state law—obviously not met in the federal actions—did not govern decision in the diversity cases. On this basis, because without the restriction the federal actions were commenced within the six-months grace period, the district court denied defendants' motion to dismiss the actions as time-barred.

From this interlocutory order rejecting their statute of limitations defense, defendants were permitted to appeal under 28 U.S.C. § 1292(b).

## II

We have here yet another twist on the recurring and peculiarly difficult choice-of-law problem historically posed for federal courts required for any reason to apply state statutes of limitation. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 744, 100

---

2. Miller had not been served at the time the district court entered its order.

3. The jurisdictional challenge was based on the proposition that the venue restriction operated independently of the statute of limitations defense to deprive the federal courts of jurisdiction of any previously nonsuited Virginia claim. The district court rightly rejected this challenge on the basis of this court's 1953 holding in *Popp v. Archbell*, 203 F.2d 287 (4th Cir. 1953), that the state venue restriction could not operate to deprive the federal diversity courts of subject matter jurisdiction over otherwise cognizable state claims, *id.* at 288–89.

Plaintiffs contend as appellees—and the dissent apparently accepts the proposition—that *Popp* establishes as well that the venue restriction must also be disregarded by federal diversity courts for its limiting effect on the statute of limitations saving provision. We reject that contention. *Popp* and *Markham v. City of Newport News*, 292 F.2d 711 (4th Cir. 1961), also relied upon by the dissent, stand only for the proposition that state statutes limiting the state courts in which particular state claims may be prosecuted cannot oust federal courts of diversity jurisdiction so long as "any state court would have jurisdiction." *Popp v. Archbell*, 203 F.2d at 289. There is nothing in either *Popp* or *Markham* or in general authority to suggest—as the dissent seems to believe—that because a diversity defendant's jurisdictional objection based upon a state forum restriction must fail, so also must any substantive defense of which that restriction is an element. The

two are not linked in contemplation of *Erie*: one goes to jurisdiction, is absolute and nonwaivable; the other goes to the merits, and may be avoided substantively or waived procedurally in the diversity court. This was expressly recognized in *Popp* where Judge Parker pointed out that *Erie* cases such as *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) involving the application in diversity cases of state statute of limitation defenses were "not in point" on the issue whether a state venue restriction could oust federal diversity jurisdiction. *Popp v. Archbell*, 203 F.2d at 289- 90. No statute of limitations or res judicata defense based upon the venue restriction was at issue in *Popp*. The savings provision had not been enacted, and no res judicata defense was raised, a point noted in *Popp*, 203 F.2d at 289, but apparently overlooked in *Alderman v. Chrysler Corp.*, 480 F.Supp. 600 (E.D.Va.1979) (*Popp* relied upon as basis for rejecting res judicata defense following state court nonsuit).

4. We were advised on oral argument that plaintiffs had also prudently recommenced the action in the state nonsuit court within the grace period.

5. *See* note 3 *supra*.

6. The district court, however, dismissed as time-barred a fifth companion case in which no voluntary nonsuit had been taken

S.Ct. 1978, 1981, 64 L.Ed.2d 659 (1980). Whether encountered, as here, in a diversity case in which, under *Erie*'s command, the state statute is being applied *qua* state law, or in a federal claim case where it is being "borrowed" in the absence of a federal statute, *see, e.g., Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the difficult question has always been how much of state law governing limitation of actions is to be applied. Obviously, if any part is to be applied, the aspect of chronological length of the limitation period must be, and at least since *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), this much has been settled in diversity cases. The rub has come generally, as it does here, in deciding whether other, related aspects of the whole body of state limitation doctrine—tolling, saving, estoppel, etc.—shall also be applied.

That of course is the specific question here. No one doubts, indeed there is no dispute, that the two-year period of Va. Code § 8.01–243(A) controls. The question is whether the venue restriction, which in the Virginia statutory scheme operates as a condition to invocation of the six-months saving provision for timely commenced nonsuited actions, is also to apply. If it does, the actions here are time-barred, because the special condition for invocation has obviously not been met. If it does not, the actions are not time-barred because the federal actions were commenced, though not in the restricted venue, within the grace period of the saving provision.

Though the general problem, as indicated, has long been a troublesome one, we think that recent Supreme Court decisions now give a plain guide to decision here and specifically to decision that the venue restriction must be applied as a critical element of Virginia's policies respecting the time-barring of actions voluntarily nonsuited in its courts.

### A

■ The critical principle now established in the diversity context is that, ex-cept as a valid federal procedural rule might be in direct conflict, *see Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), or possibly as there might be a sufficiently powerful countervailing federal interest not embodied in a specific procedural rule, *see Byrd v. Blue Ridge Rural Electric Cooperative*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), every aspect of state law that can properly be considered "an integral part of the several policies served by [a] state statute of limitations," *Walker v. Armco Steel Corp.*, 446 U.S. at 751, 100 S.Ct. at 1985, is to be applied by a federal court in the course of applying the state limitation period. *Cf. Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (federal claim; state statute borrowed). The proper inquiry therefore in this and related cases is a two-step one: first, whether application of the state rule is precluded in any event by the existence of a directly conflicting federal rule of procedure or a sufficiently powerful countervailing federal interest otherwise grounded; and second, if not, whether the state rule is "an integral part of the several policies served by the state statute of limitations."

There is no federal rule of civil procedure in direct conflict either with the Virginia venue restriction itself or with the tolling and savings provisions whose operation it conditions. Only Fed.R.Civ.P. 3—in specifying the manner and time for commencing a federal action—might be thought to constitute even in diversity cases a generally preemptive federal tolling rule. As to this possibility the Supreme Court has recently held in this very context, reaffirming *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), that Rule 3 was not intended "to displace state tolling rules for purposes of state statutes of limitations." *Walker v. Armco Steel Corp.*, 446 U.S. at 750–51, 100 S.Ct. at 1985. In consequence the *Hanna v. Plumer* displacement principle has no application here.

Neither are there discernible to us any countervailing federal interests deriving

from other sources than the federal rules of civil procedure which, under *Erie* and its progeny, might require displacement of the state rule in question. To the extent federal/state forum shopping concerns are at all a factor, they militate against rather than for displacement of the state rule. .[7] Neither do we see how any other federal interest would be affected by strictly applying the state rule in accordance with *Erie*'s basic command.[8]

## B

This leaves only the question whether the rule in question is so integral a part of Virginia's statute of limitations policies that it must be considered for *Erie* purposes part and parcel of the statute here pleaded in defense. That it is can be seen by analyzing the close interrelatedness and interdependence—reflected in the critical statutory cross-referencing—of the policies underlying Virginia's voluntary nonsuit procedure and the special tolling and saving provisions tied to it. The policies are thereby revealed to be so integrated in purpose and function that the venue restriction can only be seen as part and parcel of any statute of limitations pleaded in bar of a voluntarily nonsuited state action. *Cf. Walker v. Armco Steel Corp.*, 446 U.S. at 751–52 & nn. 12, 13,

100 S.Ct. at 1985 -1986 & nn. 12, 13 (interrelation of state service rule and statute of limitations).

The policies underlying Virginia's voluntary nonsuit procedure are manifestly those that traditionally have underlain this ancient procedure in its common law and statutory forms: to protect claimants having the laboring oar of proof from the common mischances of litigation, while at the same time protecting the courts and opposing parties from abuses of the nonsuit privilege.[9] After recognizing the basic privilege, *see* Va.Code § 8.01 -380 A (1977), Virginia law then rigorously conditions its exercise with threshold limitations: it can only be exercised once without prejudice, *id.* § 8.01 -380 B; it must be exercised in timely fashion, before the claimant's proof has been put to test, *id.* § 8.01 -380 A; it may not be exercised when related counter-, cross-, and third party claims are pending, *id.* § 8.01 -380 C. Aside from these internal conditions, statutes of limitations inevitably stand in the wings as collateral barriers to free exercise of the nonsuit privilege since, in the nature of things, they frequently have run (or are about to run) when the need for nonsuit first occurs. The tolling and saving provision is the traditional—and

---

**7.** *Erie* forum shopping concerns are properly concentrated essentially on those factors influencing primary forum choice, especially the choice of a federal over a state forum in order to avoid an unfavorable state rule. *See, e.g., Hanna v. Plumer*, 380 U.S. 460, 467-69, 85 S.Ct. 1136, 1141–1142, 14 L.Ed.2d 8 (1965). At the stage of original forum choice in this litigation, the venue restriction is so attenuated a factor that it simply cannot be given weight. It only becomes a live factor *if* the original choice is a state forum, and *if* a voluntary nonsuit is then taken in that forum. At this point, failing to apply the state rule in the federal courts could make the existence of different rules a forum shopping factor. To the extent it is appropriate to carry the concern this far, application of the state rule furthers the *Erie* aim of discouraging forum-shopping at this remote second stage. *Cf. Walker v. Armco Steel Corp.*, 446 U.S. at 753 & n.15, 100 S.Ct. at 1986 & n.15 (no indication state service laws more burdensome than federal rules).

**8.** The considerations that in *Atkins v. Schmutz Mfg. Co.*, 435 F.2d 527 (4th Cir. 1970) (en banc) were held to require in that diversity case application of a judicially created federal tolling rule rather than a conflicting state rule are not present in the instant case. In *Atkins* the court was concerned with the tolling effect of a previously filed and dismissed federal action on a subsequently commenced federal action. In holding that federal rather than state law should govern that question, the court's emphasis was upon the unitary nature of the federal system and the need for courts within that system to accommodate each other's actions as in effect their own. In the instant case, by contrast, we are concerned with the tolling effect of an action commenced in a state system, a concern to which the *Atkins* considerations are not pertinent.

**9.** *See generally* Head, *The History and Development of Nonsuit*, 27 W.Va.L Q. 20 (1920) (general survey); Sweeney, *Nonsuit in Virginia*, 52 Va.L.Rev. 751 (1966); Note, *The Voluntary Nonsuit in Virginia*, 7 Wm. & Mary L.Rev. 357 (1966).

Virginia's—accommodation to this extrinsic barrier. It serves that accommodating purpose, but inevitably in the process increases the risk of abuse. The venue restriction in turn responds to this. Its purpose is to minimize the risks of abuse by minimizing the potential benefits of being able once to recommence without prejudice and free of any limitations bar. In particular it scotches any opportunity to engage in secondary forum shopping with benefit of a trial run in a court of first choice. By this means claimants are encouraged to get it right the first time while a limited safety valve is yet preserved. The risk of wasted effort by the court of original venue choice is minimized, both by the *in terrorem* discouragement of nonsuits taken for forum shopping purposes, and, when nonsuit is taken, by the possibility that the earlier investment of judicial resources may be of value on retrial in the same court.

As is plain from this, both the tolling/saving provisions and the venue restriction are integral parts of the policies served by any Virginia statute of limitations which, but for the saving provision, would stand as a bar to a previously nonsuited action. The venue restriction is a "statement of a substantive decision" by Virginia, *see Walker v. Armco Steel Corp.*, 446 U.S. at 751, 100 S.Ct. at 1985, that nonsuiting plaintiffs may only be saved from the running of applicable statutes of limitations by recommencing their actions within the grace period and in the same court whose processes were originally invoked. To fail to apply this critical restriction in a federal diversity case would be to fail to apply Virginia's limitation policies entire, a result forbidden by *Erie* and its progeny. *See Walker v. Armco Steel Corp.*, 446 U.S. at 753, 100 S.Ct. at 1986.

### III

The order of the district court is reversed and the action remanded for entry of judgment dismissing all claims as time-barred in the federal actions under Va.Code § 8.01–243(A).

REVERSED AND REMANDED WITH DIRECTIONS.

MURNAGHAN, Circuit Judge, dissenting:

There is no harm in making, indeed there is every reason, wherever possible, to make a major effort to achieve the correct legal result, even though the circumstances are challenging. But that does not authorize or justify a conclusion, however superficially appealing, not consistent with the law. In the interests of precedent and evenhandedness, we must remember that Congress legislates, not the courts. Such a situation presents itself here.

A diverse plaintiff filed an action in state court. He took a voluntary nonsuit, recreating the *status quo* before he filed suit at all.[1] He then decided to refile in Federal

---

1. In Virginia, it appears that the consequence of a voluntary nonsuit is the effective ending for all purposes of the original action. In *Mallory v. Taylor*, 90 Va. 348, 18 S.E. 438 (1893), the plaintiff entered a nonsuit.

> So there was *an end* of that suit upon the motion of the plaintiff, the effect of which was that the plaintiff retracted his suit without prejudice (by that action of retracting his suit) to his right to bring *another* suit when so advised.... The effect of the nonsuit in this comprehensive sense is to *put an end* to the pending suit without precluding *another* for the same cause of action.

90 Va. at 351, 18 S.E. at 439 (emphasis supplied).

*Cf. Thomas Gemmell, Inc. v. Svea Fire & Life Ins. Co.*, 166 Va. 95, 97, 184 S.E. 457, 458 (1936) ("The effect of a non-suit is simply to put *an end* to the present action, but is no bar to a subsequent action for the same cause." (Emphasis supplied.)

*See* W. W. Sweeney, *Nonsuit in Virginia*, 52 Va.L.Rev. 751, 764 (1966):

> Of course, when a nonsuit order is entered the case goes off the docket in the same manner as a case which has been concluded by trial or final settlement. When and if the action is reinstituted, it assumes the status of an original suit and is treated as such for purposes of costs and docket position. The case is refiled as a new suit by the plaintiff and not automatically reinstated by the court.

*See also Alderman v. Chrysler Corp.*, 480 F.Supp. 600, 603–04 (E.D.Va.1979):

> In Virginia, a judgment of nonsuit does not operate as a bar to a subsequent suit between the same parties on the same cause of

court. Under Virginia law, since more than two years had elapsed, he was barred by limitations from suing in federal court, and, indeed, in any state court other than the court for the county in which he had originally proceeded, but then had taken a nonsuit. He was not time-barred in that one state court only because of the interaction of two Virginia statutes:

1) Virginia Code § 8.01–380(A), a venue statute restricting a new proceeding on the same cause as to which a nonsuit had been taken to the court in which the nonsuit had been entered.

2) Virginia Code § 8.01–229(E)(3) (Cum. Supp.1981), tolling in case of a prior voluntary nonsuit the statute of limitations to allow recommencement of the action within six months from the date of the nonsuit or within the original period of limitations, whichever is longer.[2]

The language of 28 U.S.C. § 1332 confers jurisdiction of "all civil actions . . . between citizens of different States."[3] An earlier case in this Court, *Popp v. Archbell*, 203 F.2d 287 (4th Cir. 1953) made clear that Virginia, by the language of § 8.01–380(A), "could not limit the jurisdiction of courts of the United States." Refiling in federal court following a nonsuit was held proper despite the attempted statutory restriction of any new proceeding to the court in which the nonsuit was taken because "a state ven-

---

action. *Payne v. Buena Vista Extract Co.*, 124 Va. 296, 98 S.E. 34 (1919). The only effect of a nonsuit is to put an end to the pending litigation without prejudice to either party. *Cf. Thomas Gemmell, Inc. v. Svea Fire & Life Ins. Co.*, 166 Va. 95, 184 S.E. 457 (1936) (later suit in State court); *Popp v. Archbell*, 203 F.2d 287 (4th Cir. 1953) (later suit in federal court.) Therefore, the prior suits in State court for property damage by Margaret Alderman, the car owner, and the wrongful death action by Nina Alderman as Administratrix of Charles Alderman's estate are of no legal consequence here. They will not be further considered or referred to in this opinion.

**2.** The six months grace period is the operative part of the statute for the purposes of the case. The original two year period of limitations, beginning in October, 1978, had already expired when (a) the nonsuit was taken on January 30, 1981 and (b) a new suit was begun in federal court on February 11, 1981.

Note that the allowance of the grace period is in a section of the code which is limitational in nature, but which does not mention any venue confinement to the court of original proceeding as a condition of enjoying the grace period. There is a statutory cross reference ("If a plaintiff suffers a voluntary nonsuit as prescribed in § 8.01–380 the statute shall be tolled. . . ."), but it is just that, a cross reference, not necessarily a condition creator.

Whether it is or is not a condition creator, is one of the major points of division between the majority and me. The clear Virginia understanding that a nonsuit is an entirely new and different proceeding, demonstrated by the authorities in note 1, *supra*, goes a long way to refute the idea that creation of a venue condition was in the mind of the legislature. If not, the case is easily decided in favor of plaintiffs, whose suit in federal court would, then, clearly be timely. Venue would continue to be governed solely by Virginia Code § 8.01–380(A) as construed in *Popp v. Archbell*, 203 F.2d 287 (4th Cir. 1953).

It seems unlikely in the extreme that the Virginia legislature had it in mind that the six months' grace period provided in § 8.01–229(E)(3) was conditional on a filing of the new proceeding in the court in which the nonsuited case had originally been instituted, as provided in Virginia Code § 8.01–380(A). The latter act was not amended in 1977 when § 8.01–229(E)(3) first entered the statute books. Va. Code § 8.01–380(A) then had a well defined meaning. It would restrict an action filed in state court to the county where the original nonsuited case had been filed. *It would not, however, bar a suit in federal court, even though that was a different court than the one in which the nonsuited case had been filed.* The 1977 amendment adding § 8.01–229(E)(3) which granted the six months' grace period in the case of a reinstituted case earlier ended by nonsuit evidences no intent to change the accepted meaning which, by *Popp v. Archbell, supra*, was that § 8.01–380(A) referred only to suits instituted in state courts, and was inapplicable altogether to suits on the same cause of action commenced in federal court.

Nevertheless, even if that is not the correct statutory interpretation, in the end the result would not differ. To establish that such is so, I proceed to address the case as though the creation of a condition that suit be recommenced in the same court (federal or state) as the one in which the nonsuit had been taken was the purpose of the legislature when it provided for a six months' grace period.

**3.** Satisfaction of the jurisdictional amount requirement is not contested.

ue statute can have no application to courts of the United States." *Id.* at 288.[4]

The majority's attempted distinction of *Popp* is not persuasive. "[S]uing in the state court does not amount to an election between state and federal courts and . . . the pendency of an action for damages in a state court does not preclude the plaintiff from suing on the same cause of action in the federal court." *Id.* at 289. The distinction apparently asserted by the majority is that it is not the language of § 8.01–380(A) held ineffectual in *Popp* alone which bars plaintiff's action, but rather that language, in conjunction with the language of § 8.01–229(E)(3) granting the special six months grace period to a nonsuiting plaintiff.

However, § 8.01–229(E)(3) by its own language simply grants the six months, not conditioning it on where suit is brought, except that, as a matter of cross-reference, it makes itself applicable to "a voluntary nonsuit as prescribed in § 8.01–380." The Virginia-court-only provisions are expressed in § 8.01–380(A). It is by that very § 8.01 380(A) venue phraseology that the majority would erect a bar of limitations. The diffi-

culty is that, thereby, the very thing not permitted in *Popp* has been accomplished. On February 11, 1981, each plaintiff had a cause of action that was not time barred by Virginia law. By reason of the six months' grace period he had until July 30, 1981 to file suit. But Virginia sought to condition exercise of the right to bring suit on its being filed in a state court. Its statutes said: "You have until July 30, 1981 to sue, but only in the Circuit Court of Fairfax County."

That creates a direct conflict with 28 U.S.C. § 1332 which says that, if a cause of action exists, and diversity and jurisdictional amount prerequisites are satisfied, suit may be brought in federal court. "The district courts shall have original jurisdiction of *all* civil actions. . . ." (Emphasis supplied.)

The majority take the line that jurisdiction is not questioned by them. Rather, they contend, the federal district court clearly had jurisdiction, and their result depends only on a statute of limitations point of substantive law.[5] The result is artistic,

---

4. *Markham v. City of Newport News*, 292 F.2d 711 (4th Cir. 1961):
   > It became axiomatic, therefore, as will be shown presently, that *whenever* there was a substantive right enforceable in a judicial proceeding in *any court of the state*, it was enforceable in the courts of the United States if the controversy was between citizens of different states and involved the minimum amount of money.
   *Id.* at 713 (emphasis supplied).
   > The Supreme Court has held ineffective state attempts to limit tort actions to her own courts. . . . The Supreme Court held that the courts of Texas could enforce the substantive rights subject to the conditions precedent of notice and of time limitations imposed by New Mexico, but without regard to her attempt to restrict the jurisdiction of the courts of other states.
   *Id.* at 715–16.

5. To make that point, the majority must, in effect, coalesce the two proceedings, saying that jurisdictional questions were all disposed of with respect to the first, nonsuited case, and that, in the guise for the second case of a continuation, a reinstatement, a reactivation, the federal court may give deference to the state statute of limitations under *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct.

1978, 64 L.Ed.2d 659 (1980) and *Board of Regents of the University of the State of New York v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980).

Were it acknowledged that two separate and distinct actions are involved, it would become sophistry to say that all that the Virginia statutes govern with respect to the filing of the second "new" proceeding is *limitations*, with the *jurisdiction* of the federal court undisturbed. The substantive effect, not the verbalisms employed are what count. *See, e.g., Robinson v. American Broadcasting Companies*, 441 F.2d 1396, 1400 (6th Cir. 1971) (substance of statute, not form, governs its constitutionality); *Scott v. Eastern Airlines, Inc.*, 399 F.2d 14, 24 (3d Cir. 1968), *cert. denied*, 393 U.S. 979, 89 S.Ct. 446, 21 L.Ed.2d 439 (1968) (choice of law governed by substance of action, not form of pleading). To say that the federal court has jurisdiction, but a jurisdiction which is defeated instanter by a correlative state statute of limitations applicable in the federal court, but not in the state court, is realistically no different than saying that a federal court has been denied jurisdiction altogether.

The alternative approach that there is but one cause of action discontinued by nonsuit but reactivated by refiling does violence to the statute. Va.Code § 8.01-229(E)(3) speaks of "re-

it is clever, and it may reach a more equitable end considering the case before us alone. But the result can only be achieved by disregarding necessary implications for other cases, where to follow the result will lead to disregard of the law. The result does not withstand analysis.[6] The statutes, under the majority's rationale accomplish the same end here as if they had read:

The cause of action will be barred in two years if filed anywhere, including a federal district court, other than in a court of the Commonwealth of Virginia. The cause of action may be instituted in a

commencing" the action. Webster's Third New International Dictionary defines "to recommence" as "to undergo a new beginning." It is simply a forcing of language to say that to begin anew is the same as to continue. Va. Code § 8.01–380(A) speaks of a "new proceeding" after a nonsuit, language at war with the theory of reactivation or reinstatement.

Deference to the Virginia statutes is the key argument of the majority, yet the interpretation is singularly undeferential, disregarding what the legislature said. *Cf. Thomas Gemmell, Inc., supra,* 166 Va. at 101, 184 S.E. at 459:

We are not dealing with an appeal abandoned but with a case dismissed upon final judgment. It follows that the judgment of the justice has been vacated and annulled. It has not been reinstated by statute.

**6.** The cases cited by the majority are ones which hold that state statutes of limitations, or related aspects of state law, are to be given effect. Yet none of them creates a situation such as is here presented, where the consequence of application of state law is to require the suit to be brought in state court, or, stated otherwise, effectively to deny jurisdiction to the federal district court. None of the cases achieves the result the majority achieve here of a different result depending on whether resort is had to state or federal court. For example, *Guaranty Trust Co. v. York,* 326 U.S. 99, 107, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945) said there was no federal right to proceed "when no recovery could be had in a State court because the action is barred by the statute of limitations." The implication is strong that "when recovery *could* be had in a state court because the action is *not* barred by the statute of limitations," a federal court would take cognizance of the suit.

The questions presented in those cases, regardless of the answer, did not rule out jurisdiction in either state court or federal court. Either alternative remained fully open to a party. He may have had to do different things, depending on whether state law or federal rule applied, but, so long as he followed whichever rule was chosen, either state or federal court was equally open to him. In the present case, however, under the majority's decision suit in federal court was not available, whatever the plaintiff might do, while suit in state court was.

Specifically, in *Walker,* the federal court case was, under the federal rules, commenced simply by filing, but the state requirement was that, in addition, to achieve commencement,

service had to be effected within sixty days. That, however, created no condition compelling election of a proceeding in a state court. In state or federal court alike a completion of service within sixty days would perfect jurisdiction. In state or federal court alike, a failure to effect service, within sixty days would bar suit. The treatment of the plaintiff in both forums was, consequently, identical under the *Walker* decision. In Yarber's case, on the other hand, the majority decision compels disparate results, depending on whether filing is in state or federal court.

*Tomanio* likewise produces harmony, not dissonance, as between state and federal courts. In both *Walker* and *Tomanio,* the Court rejected contentions that federal limitations rules should be applied specifically to allow cases brought in federal court to stay alive, whereas, had they been brought in state court, death through the running of limitations would have taken place. Logically, a state rule allowing a diversity case to stay alive if brought in state court should be applied in federal court too in order to assure equal treatment.

In *Markham v. City of Newport News,* 292 F.2d 711 (4th Cir. 1961), this court stated:

Power to impose conditions precedent which will operate in the same way and lead to the same result whether the action be brought in the courts of the state or those of the United States does not carry with it power to oust the federal jurisdiction.

*Id.* at 714.

[A] federal court exercising its diversity jurisdiction to adjudicate rights created by the state sits as another court of that state and should reach the same result as the state courts would reach in deciding the identical issue. It is conformity in result which is required. A nonresident litigant resorting to the federal diversity jurisdiction should obtain the same relief a resident litigant asserting the same cause of action would receive in the state courts. . . .

. . .

It would be quite foreign to the Erie doctrine, however, to apply a state statute in such a way as to deny all relief in a federal court to a nonresident plaintiff on a cause of action which, clearly, the state courts would recognize and enforce. Erie requires that the federal court grant or withhold relief as the state courts would.

*Id.* at 718.

Virginia court, dismissed and begun anew at any time within a period up to two years plus six months.

Treatment of two plaintiffs differently cannot depend simply on whether suit is begun in state or in federal court. This is as true whether the road travelled is one of "jurisdiction" or one of "limitations." Indisputably plaintiff could bring a "new proceeding" on February 11, 1981 in state court, *and have the case treated as timely filed.* Plaintiff could equally sue in federal court. 28 U.S.C. § 1332 and *Popp* make that clear. But plaintiff, under the reasoning of the majority as to the legitimate effect of the Virginia statutes, could not be deemed to have timely filed in the federal court. In short, the majority has approved the imposition of a limitations bar which has taken plaintiffs out of court as quickly as, for purely jurisdictional purposes, they got in. By a mere verbal formalism one should not be able to nullify the supremacy of federal legislation over a contrary state enactment where, whatever language is employed, jurisdictional or limitational, the result is the same.

The only question then is whether the sanction of a limitations bar, applicable if suit is filed in federal court, but inapplicable in a state court proceeding, may be imposed to force institution of suit in the state court. Can the unequal treatment stand, bearing in mind that practically it leads to dictation by a state statute that the case not be brought in federal court?[7]

The strongest argument of the majority derives from the fact that the recommencing of suit after a voluntary nonsuit was a

second bite at the apple. Even, suggests the majority, if such a condition could not be imposed as to the initial filing of suit, it is all right to do so the second time around, when recommencing an action already previously brought and nonsuited. The plaintiff should have had his eyes open and his wits about him, the argument runs, and realized that the restriction to a state court for a suit utilizing the six months' grace period was one of the consequences of the initial choice.[8]

That argument can hardly survive *Popp*, however, for the plaintiff there could have selected a federal venue initially, yet opted for a state proceeding. No "waiver" principle was deemed applicable there, and no waiver of the right to proceed in federal court in order to utilize the six months' grace period should operate here. Otherwise, "suing in the state court" would "amount to an election between state and federal courts." *Popp* explicitly forbids such treatment.

The potentialities of the majority opinion for mischief are several. Suppose the suit were originally initiated in federal court, and then a voluntary dismissal without prejudice were taken pursuant to F.R.Civ.P. 41(a)(1). In the majority's view, when the case was recommenced in federal court, more than two years after the date on which limitations began to run, but within six months of the voluntary dismissal, the claim would be time barred if the voluntary dismissal were not construed as a "nonsuit" for the purposes of Va.Code § 8.01-229(E)(3). There would consequently be

---

7. What if the Virginia statute had said that, for a suit in state court the statute of limitations would be two years, but for suit in a federal court (or state court other than a Virginia court for that matter) the statute of limitations would be one year or six months? The statute would present the very same question as the one we are presented with. There would be *jurisdiction* in the federal court after one year and nine months, but, for what the majority classify as purely a matter of proper state interest—the limitations period (or, more properly, periods), the case practically could not be brought.

8. The majority elaborates by suggesting that the Virginia legislature had in mind considerations of convenience "of protecting the courts and opposing parties from abuses of the nonsuit privilege." (At 236.) The majority alludes to "secondary forum shopping" as a consequence the avoidance of which is desirable. *See*, however, *Markham v. City of Newport News*, 292 F.2d 711, 714 (4th Cir. 1961):

> Neither considerations of convenience in the administration of estates nor the restrictions of the state statutes could defeat the jurisdiction conferred upon the courts of the United States by the Constitution and the acts of Congress.

substantially different results depending on the *initial* decision, made well within the two year limitations period, whether to bring the original, and entirely separate, suit in federal court or across the street in state court.[9]

The majority apparently accepts that a plaintiff electing *initially* to sue in federal court would have to do so recognizing that he thereby abandoned the six months' limitations extension should he thereafter decide to discontinue and recommence. Had his initial choice been the state court, however, that advantage would not have been foreclosed to him.

That would, I submit, generate serious problems, for the whole thrust of *Erie*[10] would be frustrated, by the simple expedient of labelling. A state would be able to deny equal treatment to a voluntary dismissal under the Federal Rules of Civil Procedure in circumstances where its effect is essentially identical to that of a voluntary nonsuit in a Virginia state court proceeding.[11]

Consequently, it appears inescapable that the majority's position, if it is arguably to have any validity whatever, must be modified to acknowledge that a federal voluntary dismissal without prejudice does qualify as a voluntary nonsuit under § 8.01-229(E)(3). A dismissal under F.R.Civ.P. 41 may be with prejudice, in which case it would be unlike a voluntary nonsuit. *Popp v. Archbell, supra*, 203 F.2d at 289. But when without prejudice, a federal voluntary dismissal is the exact equivalent of a Virginia voluntary nonsuit. *Cf.* W. W. Sweeney, *Nonsuit in Virginia*, 52 Va.L.Rev. 751, 754–55 (1966). So, commencing initially in federal court, and, taking a voluntary dismissal without prejudice, a plaintiff should, under § 8.01–229(E), be able to file timely a new proceeding in federal court by claiming the benefits of the six months' grace period. Certainly, if recommencement were to occur in the same federal district court, that would be "the court ... in which the nonsuit was taken."

That inexorable conclusion deriving from the majority's opinion has a disturbing aspect. Although the majority insist that they speak only of "limitations," not of "jurisdiction," the situation presents itself as one where the state has created a cause of action not cognizable in its own courts and exclusively to be begun, if at all, in the federal courts, and federal courts alone. If the plaintiff, having begun in federal court a case which he voluntarily dismissed without prejudice, sought thereafter to refile in state court (or, presumably, in any other federal district court than the one of original filing [12]), unfortunately, because of the linkage to § 8.01–380(A), he would be denied the advantages of the six months'

---

**9.** Note that Chief Judge Parker concluded in *Popp v. Archbell, supra*, that a restriction as to the court of reinstitution when a nonsuit had been taken would amount to "prejudice."

**10.** *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In *Walker, supra*, 446 U.S. at 745, 100 S.Ct. at 1982, it was stated:

> In construing *Erie* we noted that "[i]n essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court."

A statute of limitations is as much a "legal rule" as is a statutorily established jurisdictional requirement.

**11.** To avoid that result, and thereby conform to the accepted understanding that "[t]he *only* effect of a nonsuit is to put an end to the pending litigation *without prejudice* to either party," *see* n.1, *supra* (emphasis supplied), we are driven to conclude that, to give validity to the majority's position, we should have to accept that, where the initial suit had begun in federal court, recommencement within six months of a voluntary dismissal without prejudice would be timely, even if more than two years from the occurrence on which the cause of action would be based had elapsed.

**12.** Would not such a state law determination that one federal court alone might hear the matter represent the clearest impermissible intrusion by a state into federal court affairs? *Cf. Atkins v. Schmutz Manufacturing Co.*, 435 F.2d 527 (4th Cir. 1970) (*en banc*), *cert. denied*, 402 U.S. 932, 91 S.Ct. 1526, 28 L.Ed.2d 867 (1971).

grace period. The state court, and any federal court other than the one in which the predecessor case had been filed, would not be the court in which the nonsuit had been taken. Apparently, therefore, the plaintiff would be out of luck (and out of court).

Upon analysis, it all comes down, therefore, to an attempt, as the Virginia statutes are read by the majority, by a state to interfere with the docket of the federal court, denying jurisdiction to the federal court in a diversity case like the present one in favor of the state court, but barring the state court doors, *while opening the federal court's portals* should the case have originated and been refiled in federal court. That "right" in a state to confer exclusive cognizance of a matter to the federal courts is suspect, to say the least.

Is it not something of a stretch if, to preserve the validity of the Virginia statute, we must acknowledge a right to come into federal court on terms imposed by a state?

The varying results take no account of the fact that circumstances may change between the time of initial filing and the time of recommencement (under state law, the beginning of a wholly new piece of litigation). They also generate consequences at war with the rationale of *Erie*. The idea behind *Erie* was to allow diverse parties a federal forum, but to make resort to a federal forum lead to exactly the same treatment (except for elimination of the supposed bias towards non-residents) as in state court. Yet the majority would introduce substantial variations dependent solely and exclusively on where a filing took place. That contradicts the considerations which, until now, have been deemed controlling.[13]

Based on all the foregoing, it is, in my judgment, evident that the Virginia legislature gave no consideration to the impact of the two statutes (one restricting venue, the other granting a six months' grace period) on an initial suit or on a refiling in federal court. The legislative concerns were all exclusively directed at the functioning of the courts of the Commonwealth. "Let the Congress," the Virginia legislature appears to have decided, "make its own arrangements." The federal arrangements provide access to the six months' grace period where refiling is in federal court simply because, otherwise, the egalitarian teaching of *Erie* that the rule and result should be the same in a diversity suit, whether filed in federal or in state court, would be offended. The federal statute applies to *all* civil actions.

It is for those reasons that I dissent. Appellees do not present a particularly appetizing case, it is true. Still they are entitled to the benefit of the law.

---

**13.** *See Walker, supra,* 446 U.S. at 753, 100 S.Ct. at 1986:

> The policies underlying diversity jurisdiction do not support such a distinction between state and federal plaintiffs, and *Erie* and its progeny do not permit it.

*See also Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 532–33, 69 S.Ct. 1233, 1234, 93 L.Ed. 1520 (1949);

> *Erie R. Co. v. Tompkins,* 304 U.S. 64, [58 S.Ct. 817, 82 L.Ed. 1188] was premised on

the theory that in diversity cases the rights enjoyed under local law should not vary because enforcement of those rights was sought in the federal court rather than in the state court....

. . . .

> Otherwise there is a different measure of the cause of action in one court than in the other, and the principle of *Erie R. Co. v. Tompkins* is transgressed.